[No. E000366. Fourth Dist., Div. Two. Mar. 26, 1985.]

WILLIAM B. SHAMBLIN et al., Plaintiffs and Appellants, v.
DON L. BERGE et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III of the Appeal, and parts I, II, and III of the Cross-appeal.

**COUNSEL**

Buzard, Larson & McIntyre and Jeffrey C. McIntyre for Plaintiffs and Appellants.

Butterwick, Bright & Cunnison and J. D. Butterwick for Defendants and Appellants.

**OPINION**

**RICKLES, J.**—While acting as real estate agents for plaintiffs William and Grace Shamblin, defendants Don and Betty Berge engaged in the conduct which gave rise to this controversy. Both parties appeal from portions of the judgment rendered below raising the contentions herein discussed.

### FACTS

In June of 1973, plaintiffs obtained a loan from the Kissell Company (hereinafter Kissell) for the purpose of constructing a townhouse devel-

opment in the City of Riverside. The loan matured in December of 1974 and Kissell demanded full payment. When plaintiffs were unable to comply, Kissell filed a judicial foreclosure action in February of 1975 and concurrently obtained an ex parte order appointing a receiver to take possession of the development. The receiver's appointment was confirmed in July of 1975, and plaintiffs were found in contempt of court for willfully refusing to deliver possession. In September of 1975, before the foreclosure sale, plaintiffs accepted a settlement offer whereby Kissell was awarded title to 32 completed units and plaintiffs were awarded title to 63 manufactured lots. This acceptance was formalized in October of 1975 and the foreclosure action dismissed. One month later, the receivership was terminated and the receiver discharged.

Sometime after the receiver's ex parte appointment but before his confirmation, plaintiffs obtained deposits on two units from Leo and Marjorie DeLage.[1] Shortly thereafter, in May of 1975, defendants approached plaintiffs and indicated that they desired to act as real estate agents for the development despite the pending foreclosure action. Defendants were subsequently given the exclusive right to sell units commencing June 1, 1975, but failed to consummate any sales. To make matters worse, defendants began warning the DeLages to rescind their agreements and withdraw their deposits because plaintiffs were in financial trouble. They also began advising the DeLages that a purchase of the same units could be arranged directly from Kissell for a substantially lower price. Each time the DeLages visited the development, defendants repeated these warnings and advisements. Eventually, the DeLages withdrew the money they had deposited with plaintiffs and agreed to purchase from Kissell. The new purchase agreement was prepared by defendants.

When plaintiffs were apprised of defendants' actions, they filed a complaint alleging breach of fiduciary duty (first cause of action), fraud (second cause of action), breach of contract (fourth cause of action), interference with a contractual relationship (fifth cause of action), and slander (seventh cause of action)[2] A jury returned special verdicts on each cause of action determining therein that defendants had breached a fiduciary duty, but in so doing had not caused injury to plaintiffs; that defendants had not defrauded plaintiffs; that defendants had breached a contract, but in so doing had not caused damage to plaintiffs; that defendants had interfered with a contractual relationship causing plaintiffs to suffer a $28,000 loss; and that defendants had not slandered plaintiffs. The jury also awarded $2,500 in punitive damages on the basis of defendants' interference.

---

[1] These units were among the 32 awarded to Kissell upon settlement.

[2] The complaint also alleged three additional causes of action, but these were dismissed at the time of trial.

Defendants appeal from the verdict rendered in the fifth cause of action, contending: (1) the trial court erred in delivering a special liability instruction, (2) at least two jury findings are not supported by sufficient evidence, and (3) the existence of the receivership and contempt decree compel reversal. Plaintiffs cross-appeal from the verdicts rendered in the remaining causes of action, contending: (1) the trial court erred in admitting evidence of the receivership and contempt decree; (2) the trial court erred in refusing to deliver five special instructions which would have apprised the jury of damages recoverable for breach of fiduciary duty; and (3) several jury findings are inconsistent.

APPEAL

I

Defendants first contend that the trial court erred in delivering special instruction No. 15 because it enabled the jury to find liability on a theory which was inconsistent with the pleadings and proof.[3] Stated more precisely, they assert that although plaintiffs pleaded and proved a cause of action for inducement to breach a contract or interference with a contractual relationship, the special instruction set forth the elements of a cause of action for interference with prospective economic advantage. We disagree, but before addressing the substantive issue seek to put to rest semantic confusion spawned by cases of this nature.

■ Inducement to breach a contract, interference with a contractual relationship, and interference with a prospective economic advantage are separate theories upon which the tort of interference with economic relations may be based. (See *Builders Corporation of America* v. *United States* (N.D.Cal. 1957) 148 F.Supp. 482, 484, fn. 1, revd. on other grounds (9th Cir. 1958) 259 F.2d 766.) ■ The first theory protects against intentional acts designed to produce an actual breach and requires that a plaintiff prove:

---

[3]Special instruction No. 15 provides: "In this action plaintiffs seek to recover damages they claim they sustained as a result of the alleged action on the part of the defendants in interfering with a contractual relationship between plaintiffs and a third party.

"A plaintiff is entitled to recover damages for any harm which results when one who, without a privilege to do so, engages in intentional acts designed to disrupt the contractual relationship.

"In order to recover damages for interference a plaintiff must prove that:

"1. The plaintiff and the third person had a contractual relationship containing the probability of future economic benefit to plaintiff.

"2. The defendant had knowledge of the contractual relationship.

"3. Unjustified and/or unprivileged [i]ntentional acts on the part of the defendant designed to disrupt the relationship.

"4. Actual disruption of the relationship.

"5. Damages to the plaintiff proximately caused by the acts of the defendant."

"(1) he had a valid and existing contract [with a third party]; (2) . . . defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by . . . defendant's unjustified or wrongful conduct; and (5) . . . damage[s] [were suffered as a result]." (*Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 995 [135 Cal.Rptr. 720]; italics omitted.) ■ The second theory is slightly broader in that it protects against intentional acts not necessarily resulting in a breach. (*Manor Investment Co.* v. *F. W. Woolworth, Inc.* (1984) 159 Cal.App.3d 586, 593 [206 Cal.Rptr. 37], fn. 3; Rest.2d Torts, § 766, com. K, at pp. 12-13; Prosser, Torts (5th ed. 1984) § 129, pp. 991-992.) It requires that a plaintiff prove: (1) he had a valid and existing contract with a third party; (2) defendant had knowledge of this contract; (3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the relationship; and (5) resulting damages. (See *Manor Investment Co.* v. *F. W. Woolworth, Inc., supra,* 159 Cal.App.3d at 593, fn. 3; Carpenter, *Interference With Contract Relations* (1928) 41 Harv. L. Rev. 728, 732-742.) ■ The third theory is still broader in that it protects against intentional acts designed to harm an economic relationship which is *likely* to produce economic benefit. It requires that a plaintiff prove: (1) he had an economic relationship with a third party containing the probability of a future economic benefit; (2) defendant had knowledge of this relationship; (3) defendant committed intentional and unjustified acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damages. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537 P.2d 865].)

■ Turning now to the issue at hand, we note that plaintiffs expressly pleaded the theory of interference with a contractual relationship in their complaint and proved a cause of action for interference with economic relations in accordance with this theory at trial. The question, of course, remains, "Did Special Instruction No. 15 accurately apprise the jury of the elements of interference with a contractual relationship?" We think not. Pursuant to this instruction, the jury was informed that plaintiffs had to prove the existence of a contractual relationship with a third party containing the probability of future economic benefit. (See, *supra,* fn. 3.) Because *future* economic benefit is an element of interference with prospective economic advantage, special instruction No. 15 is, as defendants have suggested, at least partially inconsistent with the pleadings and the proof. The jury should instead have been instructed that plaintiffs could not recover for contractual interference absent proof of a *valid* and *existing* contact with a third party. Such inconsistency does not, however, automatically compel reversal. It must appear reasonably probable that, absent the error, the jury would have returned a verdict in defendants' favor. (*Solgaard* v. *Guy F.*

*Atkinson Co.* (1971) 6 Cal.3d 361, 370-371 [99 Cal.Rptr. 29, 491 P.2d 821]; *Bolen* v. *Woo* (1979) 96 Cal.App.3d 944, 951 [158 Cal.Rptr. 454]. See also *Safirstein* v. *Nunes* (1966) 241 Cal.App.2d 416, 421-423 [50 Cal.Rptr. 642]; *Persike* v. *Gray* (1963) 215 Cal.App.2d 816, 822 [30 Cal.Rptr. 603].) No such probability appears in this instance.

The *existence* of a contract or contracts between plaintiffs and the De-Lages was established by overwhelming evidence at trial and is conceded by defendants in this appeal. (See Appellants' Opening Brief p. 12.) The *validity* of that contract or contracts was likewise established despite defendants' assertions to the contrary. ■ For purposes of proving interference with a contractual relationship, a contract is valid if it is not illegal, opposed to public policy, or otherwise void. (Prosser, Torts (5th ed. 1984) § 129, pp. 994-995. See also Rest.2d, Torts, § 766, com. f., at p. 10.) Even voidable contracts qualify under this standard. (*Buckaloo* v. *Johnson, supra*, 14 Cal.3d at 822; *Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55, 57-58 [12 Cal.Rptr. 319].)

■ Bearing these principles in mind, even if we accept defendants' position that a sale of real property under receivership is void, it does not follow that a contract for the sale of such property must be similarly characterized. At most, the receivership rendered the contract or contracts voidable at the option of the parties or the court. Accordingly had the jury been properly instructed, the same result would have been compelled by law. No prejudice appears and hence no reversal is required.[4]

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Judgment affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

---

[4]In so deciding, we simultaneously reject defendants' related argument that the complaint did not state facts sufficient to constitute a cause of action for interference with a contractual relationship. While defendants accurately assert that plaintiffs did not allege a breach of contract, such a breach is not, as we discussed above, a necessary element of that theory.

*Parts II and III of Appeal, and Parts I, II, and III of Cross-appeal are not certified for publication.