[No. A025547. First Dist., Div. Four. Mar. 27, 1986.]

JAY DANIEL DEETER et al., Plaintiffs and Appellants, v.
DONNA P. ANGUS et al., Defendants and Respondents.

242

COUNSEL

Kronick, Moskovitz, Tiedemann & Girard and James F. Geary for Plaintiffs and Appellants.

Dickenson, Peatmen & Fogarty, Herbert W. Walker and Paul G. Carey for Defendants and Respondents.

OPINION

**CHANNELL, J.**—Plaintiffs Jay Daniel Deeter, Thomas E. Kite, Gordon S. Wilbur and Donald W. Buchheit appeal from a judgment based on jury verdict in favor of defendants Donna P. Angus, Glen A. Angus, Glen A. Angus, Inc., a California corporation, and Richland Properties, Inc., a California corporation.

Since plaintiffs principally contend that the trial court erroneously sustained demurrers to certain causes of action without leave to amend, our statement of facts is taken from the pertinent pleadings produced below.

Plaintiffs' first complaint alleged that plaintiffs are each real estate brokers licensed by the State of California. Defendants Donna and Glen Angus, who are husband and wife, are corporate officers of defendants Glen A. Angus, Inc. and Richland Properties, Inc. Donna Angus, Glen Angus, Glen A. Angus, Inc. and Richland Properties, Inc. are claimed to be either the alter egos or agents of each other. In September of 1979, plaintiff Kite acquired knowledge from his coplaintiffs that the Birdcage Village, a 360-unit apartment development, was for sale. Through a series of negotiations with the agent and property manager of Birdcage Village, Kite was orally authorized to procure a buyer for the property and to present offers to A. G. Spanos, general partner of the complex. On October 3, 1979, Kite took Glen Angus to see the property. It was Angus' intention to convert the apartment complex to condominium units upon their acquisition.

On October 4, 1979, Kite submitted an offer for Glen A. Angus, Inc. to purchase the property for $9,270,000. The purchase agreement provided for a commission payable by the seller of 1½ percent for plaintiff Dan Deeter, 1½ percent for plaintiff Gordon Wilbur and 2 percent for Richland Properties, Inc. This offer was rejected. Two subsequent offers were presented to Spanos, each providing that the seller would pay a 3 percent

commission to plaintiffs and a 2 percent commission to defendant Richland Properties, Inc. These offers were also rejected.

On or about January 31, 1980, a purchase agreement was finally executed. This contract expressly provided that no commission was to be paid. Although plaintiffs alleged that defendants agreed to pay them a commission, no written agreement was ever executed by defendants. Based on these allegations, the trial court ordered inter alia that defendants' demurrer to plaintiffs' cause of action for breach of a real estate brokerage agreement be sustained without leave to amend.

In plaintiffs' second amended complaint they alleged five causes of action. The first cause of action was for interference with prospective economic advantage against all defendants. Plaintiffs asserted that because of the preliminary purchase offers, in which a 3 percent commission was to be paid by the sellers to plaintiffs, defendants were aware that plaintiffs were to receive an economic benefit if any of the preliminary offers were accepted. However, on January 31, 1980, Glen Angus and Thomas Kite met with A. G. Spanos. At that meeting Glen Angus, on behalf of all defendants, agreed to pay plaintiffs' brokerage commissions if Spanos would lower the purchase price. Despite this promise defendants subsequently refused to pay the commissions.

The second and fourth causes of action were against Donna Angus individually. Plaintiffs claimed that after the January 31st meeting Donna, with full knowledge of the agreement made by her husband Glen to Thomas Kite, informed plaintiffs that she would persuade her husband not to honor the agreement to pay a 3 percent commission to plaintiffs unless one-half of that amount was paid to her. Thereafter, Donna succeeded in making Glen breach the oral agreement. These allegations form the basis for plaintiffs' causes of action for interference with prospective economic advantage and interference with contractual relations. The trial court sustained demurrers to plaintiffs' first, second and fourth causes of action without leave to amend.

*Breach of Real Estate Brokerage Agreement*

In sustaining defendants' demurrer to plaintiffs' cause of action for breach of a real estate brokerage agreement, the lower court relied on Civil Code section 1624, subdivision 5[1] and *Keely* v. *Price* (1972) 27 Cal.App.3d 209 [103 Cal.Rptr. 531] (disapproved on other grounds in *Tenzer* v. *Superscope* (1985) 39 Cal.3d 18, 31 [216 Cal.Rptr. 130, 702 P.2d 212]). Plain-

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

tiffs contend that such authority does not support "the facts and circumstances of this case."

█ Preliminarily we note that on appeal from a judgment entered after the sustaining of a demurrer, the appellate court assumes the truth of all properly pleaded allegations of the complaint. (*Surina* v. *Lucey* (1985) 168 Cal.App.3d 539, 541 [214 Cal.Rptr. 509].) Thus, the question on demurrer is whether or not, *on the face of the complaint,* a duty to plaintiffs is shown on the part of the defendants, breach of which proximately resulted in damage to the plaintiffs. (*McGarvey* v. *Pacific Gas & Elec. Co.* (1971) 18 Cal.App.3d 555, 560 [95 Cal.Rptr. 894].)[2]

█ Section 1624,[3] commonly referred to as the statute of frauds, provides that any agreement to pay compensation or a commission to a real estate broker or agent for assistance in the purchase or sale of real property must be in writing. No case law has eroded the statute on that point. Although plaintiffs argue that a defendant may be estopped from relying on the statute of frauds where either unconscionable injury or unjust enrichment would result (see *Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 625 [220 P.2d 737]), they acknowledge that California courts have refused to apply the estoppel argument to cases involving real estate brokers and their clients.

The distinction between licensed realtors and other persons was recently reiterated in *Tenzer* v. *Superscope, Inc., supra,* 39 Cal.3d at pages 27 and 28. The rationale for rigorous application of the statute of frauds to bar claims by licensed real estate brokers is related to the statutory licensing requirements set forth in Business and Professions Code sections 10150 and 10153. A licensed real estate broker is presumed to know that a contract for a real estate commission is invalid unless it is put in writing and subscribed to by the person to be charged; however, an unlicensed person would not necessarily be aware of this law. Consequently, a buyer or seller may not be estopped from raising a statute-of-fraud defense in an action by a real estate broker.

*Interference With Prospective Economic Advantage*

█ The order sustaining defendants' demurrer to plaintiffs' first, second and fourth causes of action in their second amended complaint states

---

[2]We merely reiterate this basic legal tenet in response to plaintiffs' suggestion that this court look to the facts developed during trial in ruling on the trial court's sustaining of defendants' demurrer.

[3]Section 1624 provides in pertinent part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate, . . . or to procure, introduce, or find a purchaser or seller of real estate . . . for compensation or a commission."

that "the tort of intentional interference with prospective economic advantage will not be [*sic*] against parties to the contract or to the relationship upon which the advantage is based." While this is a correct statement of the law, it was erroneously applied to the alleged facts in this case.

■ The elements of the tort of interference with prospective economic advantage, particularly within the real estate brokerage context, are: (1) an economic relationship between broker and a third party containing the probability of future economic benefit to the broker, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, (5) damages to the plaintiff proximately caused by the acts of the defendant. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 330 [216 Cal.Rptr. 718, 703 P.2d 58]; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537 P.2d 865].) This tort does not "disintegrate because it relates to . . . an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement . . . to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable." (*Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319]; see also *Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 822; *Keely* v. *Price, supra,* 27 Cal.App.3d at p. 216.)

■ In the first cause of action of their second amended complaint plaintiffs properly alleged facts relating to each element necessary for a cause of action in interference with prospective economic advantage: plaintiffs had been authorized to procure a purchaser for Birdcage Village in exchange for which service they were to receive a 3 percent commission; defendants were aware of the relationship as evidenced from the three preliminary offers which provided for the sellers to pay plaintiffs' commission; Glen Angus agreed to pay plaintiffs' commission if the sellers would reduce the purchase price of the complex; as a result of the agreement a provision that sellers would pay a commission was omitted from the purchase agreement and plaintiffs were never paid.

Citing *Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990 [135 Cal.Rptr. 720] and *Owens* v. *Foundation for Ocean Research* (1980) 107 Cal.App.3d 179 [165 Cal.Rptr. 571], defendants maintain that interference with prospective economic advantage will not lie against a party to the relationship upon which the advantage is based. Defendants' reliance on these cases is misplaced due to their misunderstanding concerning the nature of the relationship upon which this tort is based.

We first note that *Dryden* is totally inapposite, since that case involves interference with contractual relations, a different tort. (See *infra.*) In *Owens*, a real estate broker orally agreed to act as the defendant's broker in selling real property. After being assured by defendant's attorney that the agreement had been reduced to writing, the broker produced a buyer who eventually purchased the property. However, defendant refused to pay the broker's commission. In the ensuing action filed by the broker against the seller there was, inter alia, one cause of action for interference with prospective advantage. The appellate court upheld the lower court's order sustaining defendant's demurrer to that count on the grounds that defendant was a party to the contract. It is clear from these facts that the broker in *Owens* at all times was to have received the economic benefit directly from the defendant.

*Keely* v. *Price, supra,* 27 Cal.App.3d 209, and *Buckaloo* v. *Johnson, supra,* 14 Cal.3d 815, present fact situations more similar to the case at bench. In *Keely,* the seller of real property had engaged the broker to find a buyer for the property and had orally agreed to pay the broker's commission. The broker presented the property to defendant who made an offer lower than the asking price. The seller agreed to the lower price if the buyer would pay the broker's commissions. The defendant orally agreed to these terms but subsequently failed to pay the broker. The broker's causes of action against the buyer for breach of contract, fraud and interference with advantageous economic relationship were sustained without leave to amend. The reviewing court upheld the order sustaining the causes of action for breach of contract and fraud on the grounds that they were barred by the statute of frauds. However, the court held that the fact that the original contract between the broker and the seller was oral and unenforceable, and the fact that the contract between the broker and the buyer was also oral and unenforceable, would not bar the broker's action against the buyer for interference with advantageous economic relationship. (*Keely* v. *Price, supra,* 27 Cal.App.3d at p. 216.)

Similarly, in *Buckaloo,* the seller erected a sign on her property reading "For Sale—Contact your Local Broker," intending the sign to constitute an open listing with local brokers. The plaintiff broker was approached by the buyers who had seen the sign. The broker told the buyers about the assets and liabilities of the property and, after the buyers had left, sent a note to the seller informing her that he was the "procuring cause" of the buyers. The buyers then went directly to the seller and purchased the realty without the participation of the broker. In his complaint against the buyers the broker requested damages for both breach of an implied contract and interference with prospective advantage. The trial court sustained the demurrer to both causes of action without leave to amend. On appeal our Supreme Court

held that any action against either the vendor or the vendee based on contract failed for want of compliance with the statute of frauds. However, the high court ruled that a cause of action for interference with prospective economic advantage would lie against the buyers. It reasoned that (1) the seller intended the sign to constitute an open listing; (2) she also intended that a broker procuring a buyer would be paid a commission; and (3) the broker understood the sign to constitute an invitation to himself and other local brokers to attempt to find a buyer for the property. "These facts, plus any evidence that may establish the real estate custom and practice in the community, establish a colorable economic relationship *between [the seller] and [the broker]* . . . ." (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 828, italics supplied.)

The foregoing cases indicate that where there is an understanding, albeit oral, that the seller is to pay a brokerage commission, a prospective economic relationship exists between only the seller and broker. When an outside party, such as the buyer, intentionally disrupts that relationship a cause of action may lie for interference with a prospective economic advantage. No cause of action was stated in *Owens* because the existing relationship was between the broker and the defendant seller. In contrast, both *Keely* and *Buckaloo* involved circumstances where the buyer disrupted the relationship between seller and broker. This is precisely the situation alleged in plaintiffs' first cause of action of their second amended complaint. Accordingly, we find that defendants' demurrer to that cause of action should have been overruled.

■ The erroneous sustaining of defendants' demurrer to the cause of action for interference with prospective economic advantage was obviously prejudicial. "If the court unjustifiably strikes out a party's proper pleading, thus depriving him of the opportunity to prove his cause of action or defense, the situation is much the same as if he were given no hearing at all, and the court is acting beyond its jurisdiction in thereafter proceeding to judgment." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 240, p. 634.) Thus, a fair hearing is a requisite of due process; a denial of such hearing is reversible error per se. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 364, p. 366.)

We cannot accept defendants' argument that the stricken cause of action was a sham. Had plaintiffs' attorney been allowed to tailor his presentation of evidence and argue the theory, and had the jury been instructed on interference with a prospective economic advantage, it would have been properly a question of fact whether plaintiffs had proved their case.

■ The above analysis is equally applicable to plaintiffs' second cause of action in the second amended complaint, but the result is different. Plain-

tiffs alleged that "[o]n or about January 31, 1980, defendant Glen A. Angus agreed and promised, *on behalf of all defendants* . . . to pay to plaintiffs a commission of $278,100.00 of the gross sale price of said Birdcage Village Apartments, which agreement and promise was made in part to reduce the sale price payable to the seller, BIRDCAGE VILLAGE, for the conveyance of said property. In so agreeing and promising, defendant Glen A. Angus acted on behalf of Richland Properties, Inc., the broker/agent of record, *and the other defendants.* " (Italics supplied.) The complaint further alleges that "on or about April, 1980, defendant Donna P. Angus, with full knowledge of the promises and representations made by her husband and codefendant Glen A. Angus, and with the further knowledge of the existence of the resulting economic relationship thereby established between plaintiffs and defendants, wilfully, wrongfully, and without justification interfered with plaintiffs' right to receive the $278,100.00 commission owed thereunder, by informing plaintiffs that she would persuade her husband and codefendant, Glen A. Angus, not to honor, either individually *or as agent for the remaining defendants,* said agreement to pay a 3% commission unless and until one-half of the amount due and owing to plaintiffs as commissions were paid directly to defendant Donna P. Angus." (Italics supplied.) Finally, plaintiffs claimed that Donna, in fact, disrupted the prospective economic relationship by persuading her husband not to honor his agreement. The difficulty here is that the complaint, on its face, alleges that Glen Angus was establishing the prospective economic relationship on behalf of himself and all the other defendants. Since Donna Angus was thus a party to the alleged prospective economic relationship, she could not, under *Owens,* interfere with it.

*Interference With Contractual Relations*

 Plaintiffs' third cause of action of their second amended complaint was for breach of a real estate brokerage agreement between cooperating brokerage firms. Under this theory of recovery plaintiffs alleged that they, acting as real estate brokers, introduced Richland Properties, Inc., a cooperating brokerage firm, to the Birdcage Village. Thereafter, "Glen A. Angus, acting for himself and as agent for his codefendants, . . . entered an oral agreement whereby defendant Richland Properties, Inc. was to pay plaintiffs the sum of $278,100.00 as commission for their services as cooperating brokers." This cause of action proceeded to trial.

Plaintiffs' fourth cause of action, for interference with contractual relations, was based on the contract between cooperating brokers alleged in the third cause of action. It states that Donna persuaded her husband not to honor the contract for the same reason alleged in plaintiffs' second cause of action.

■ "[T]he tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage." (*Buckaloo* v. *Johnson, supra*, 14 Cal.3d at p. 823.) This cause of action requires that the plaintiff allege "(1) he had a valid and existing contract with a third party; (2) defendant had knowledge of this contract; (3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; (4) actual interference with or disruption of the relationship; and (5) resulting damages." (*Shamblin* v. *Berge* (1985) 166 Cal.App.3d 118, 123 [212 Cal.Rptr. 313].)

■ Unfortunately, the fourth cause of action fails for the same reason that the second did. The claim for breach of a cooperating brokers' agreement averred that Glen Angus acted for both himself and all the other defendants. Accordingly, Donna was a party to the agreement and cannot be sued for interference. (*Owens* v. *Foundation for Ocean Research, supra*, 107 Cal.App.3d at p. 184; *Dryden* v. *Tri-Valley Growers, supra*, 65 Cal.App.3d at p. 999.)

*Evidence of Tape Recorded Conversation*

■ During trial plaintiffs sought to introduce into evidence a tape recording of a telephone conversation between Thomas Kite and Glen Angus. During the conversation Kite asked Angus, "Okay, did you have a chance to go over that commission agreement stuff I gave you the other day?" Angus responded, "I went over it, yeah. I haven't got Donna to go over it, but, uh, I will." He then added, "That's no problem, anyway." Kite then replied, "Yeah, I know, I just . . . . The other guys are kinda [*sic*] saying hey, you know, it's been a while, now, you know. Get it going. So I said alright, I'll, you know, give it to him on that." Defendants objected to the introduction of the evidence on the grounds that it was inadmissible under Penal Code section 632, and that plaintiffs had not produced the tape pursuant to discovery procedures. The trial court excluded the tape and a transcription thereof without comment. Plaintiffs claim it erred in so doing.

Penal Code section 632[4] proscribes the taping of confidential conversations. Subdivision (c) of that section states that "The term 'confidential

---

[4]Penal Code section 632, subdivision (a) specifically states as follows: "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment."

communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in . . . other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

■ Construction of this subdivision "calls for a determination as to whether the 'circumstances . . . reasonably indicate that any party to such communication desires it to be confined to such parties,' or whether the circumstances are such that 'the parties to the communication may reasonably expect that the communication may be . . . recorded.'" (*Warden* v. *Kahn* (1979) 99 Cal.App.3d 805, 815 [160 Cal.Rptr. 471].) This determination must be made by the finder of fact. (*Ibid.*)

■ Prior to the time that plaintiffs attempted to introduce the tape recording, Glen Angus had testified that Kite was the one responsible to pass on any information to the other brokers. In addition, Angus admitted that he expected any information he gave Kite regarding the commission would be passed on to these plaintiffs. Thus, it is unlikely that the trial court found the telephone conversation was confidential.

■ With respect to defendants' objection due to violations of discovery procedures, they argued that plaintiffs failed to produce the tape when defendants initially requested production of documents, then continued to conceal its existence in response to defendants' interrogatories.[5]

In *Thoren* v. *Johnston & Washer* (1972) 29 Cal.App.3d 270 [105 Cal.Rptr. 276], the appellate court held that the trial court had power to bar the testimony of a witness willfully excluded from an answer to an interrogatory seeking the names of witnesses to an accident. In so holding, it reasoned that "Where the party served with an interrogatory asking the names of witnesses to an occurrence then known to him deprives his adver-

---

[5]For example, defendants' interrogatory No. 41 reads as follows: "State all facts on which you base the allegation contained in paragraph 14 of the First Cause of Action of your complaint that 'contractual agreements' were entered into by and between Glen A. Angus, Donna P. Angus, and Richland Properties, Inc., with plaintiffs and please state separately with respect to each such 'contractual agreement' the following:" Thereafter, interrogatory No. 45 reads: "If your answer to Interrogatory No. 41 is based in whole or in part on any oral communications, with respect to each such oral communications, state: . . . (e) Whether there was any writing or other memorialization prepared which relates or refers to the substance of each oral communication."

In addition, defendants' interrogatory No. 81 requested that plaintiffs "[s]tate all facts on which you base the allegation contained in paragraph 26 of the First Cause of Action of your complaint, that 'Defendant RICHLAND PROPERTIES, INC. agreed to pay plaintiffs commission of three percent of the sales price.'" Interrogatory No. 84 then requested plaintiffs to "Identify all documents or writings which related to or evidence the facts set out in your answer to Interrogatory No. 81 and, for each such document or writing, state: . . ."

sary of that information by a willfully false response, he subjects the adversary to unfair surprise at trial. He deprives his adversary of the opportunity of preparation which could disclose whether the witness will tell the truth and whether a claim based upon the witness' testimony is a sham, false, or fraudulent." (*Id.*, at p. 274.) We see no reason why the same rule should not apply to the willful withholding of evidence such as the tape here at issue.

Plaintiffs maintain that the tape was not produced in December 1981, when the original request for documents was made, because the state of the pleadings was unsettled due to the sustaining of several demurrers. However, the response to defendants' interrogatories was filed September 22, 1983, more than one year after plaintiffs' third amended complaint had been filed and answered. Plaintiffs' other contention, that defendants should have filed appropriate motions below if they felt the response to the interrogatories was inadequate, has even less merit. It cannot seriously be argued that defendants had a burden to move to compel the production of a tape of which they were not aware.

The judgment on the first cause of action of plaintiffs' second amended complaint is reversed. The judgment on all remaining counts plus the judgment after trial is affirmed. The parties are to bear their own costs on appeal.

Anderson, P. J., and Sabraw, J., concurred.