Filed 9/27/21  Barrera v. Albertsons CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CRISTIAN DELGADO BARRERA, | B308657 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV05222) |
| v. | |
| ALBERTSONS LLC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard Burdge, Jr., Judge.  Affirmed.

Law Offices of Robert Samuel Scuderi and Robert Samuel Scuderi for Plaintiff and Appellant.

CDF Labor Law and Leigh A. White for Defendant and Respondent.

————————————

In this employment disability discrimination case under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), Cristian Delgado Barrera appeals from a judgment entered in favor of Albertsons LLC (Albertsons) following its motion for summary judgment.

Barrera sprained his ankle far along into his 90-day term of probationary employment and was provided with 37 days of medical leave as an accommodation, even though his probationary performance up to the point of his disability had been subpar. All parties agreed Barrera could not have performed the strenuous functions of the Albertsons job while he needed to use an ankle boot and cane.

Eventually Albertsons terminated Barrera on the basis that his pre-leave performance had consistently been graded below expectations. The trial court found that Albertsons was entitled to do so, that its reason for termination was based on his substandard performance, and that its stated reason was not a pretext hiding some discriminatory animus.

On appeal, Barrera argues the FEHA entitled him to an additional period of time to improve his performance once he returned from medical leave and that Albertsons failed to engage in a sufficient good faith interactive process prior to terminating him. He also claims the trial court erred in failing to exclude from evidence a portion of a declaration of an Albertsons employee that referenced certain evidence.

We have been provided with scant authority for the proposition that an employer must provide a poorly-performing employee, who is placed on a medical leave eight weeks into his 12-week probationary period, with more time to elevate his performance upon return from that leave. The trial court

2

properly dismissed Barrera's cause of action for failure to accommodate under the FEHA.

Barrera fails to support his argument regarding the insufficiency of the interactive process with appropriate citations to the record and legal authority. This argument is forfeited.

Before seeking to exclude evidence referred to in an Albertsons declaration, Barrera was required to engage in efforts to obtain that evidence. Albertsons' mere refusal to provide documents in response to a discovery request does not support the drastic order of exclusion of evidence. The trial court did not abuse its discretion in refusing to do so.

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Barrera's Employment with Albertsons

On March 12, 2018, Albertsons hired Barrera for the position of order selector at the Brea, California distribution center. Barrera was hired for the night shift because he was already employed during the day at Garcoa, Inc.

The job of an order selector is strenuous, requiring both strength and flexibility: one must identify appropriate items in the warehouse, and then retrieve and stack them on a pallet, with the aid of motorized equipment. Applicants were specifically advised that the job was "physically demanding [and] requir[ed] frequent bending and lifting."

Barrera was hired as a probationary employee. According to the "Brea Distribution Center Hourly Associate Reference Guide," presented to Barrera during his orientation, Albertsons

3

places new order selectors into a probationary role for 90 days. During this period, a new hire can be terminated for any reason.[1]

The job performance of order selectors is measured by an algorithm that compares the amount of time an employee *actually* takes to perform certain work as compared to the "standard" time the work *should take* at a normal pace. The "standard" time is called the engineered workplace expectancy, or "EWE." At the Brea distribution center, all of the order selectors are required to "pull" orders at a pace of 100 percent of the EWE.

All newly-hired order selectors are given a ramp-up period of at least one month after training to learn the job and increase their pace to 100 percent EWE, measured on a weekly basis. For probationary order selectors, failure to successfully ramp-up to 100 percent during the one-month ramp-up period can lead to immediate termination. Probationary order selectors must demonstrate improved EWE performance on a weekly basis. For example, by week three, a probationary order selector is expected to reach 55 percent of EWE; by week four, 75 percent of EWE; by week five, 90 percent of EWE; and by week six and thereafter, 100 percent of EWE.

Barrera's EWE numbers consistently fell below Albertsons' expectations. By week five, Barrera should have reached 90 percent of EWE, but was barely above 60 percent. By week six, Barrera had not exceeded 65 percent of EWE, although he had been expected to have reached 100 percent by that date.

---

[1] Albertsons full-time employees, on the other hand, are guaranteed a four-step disciplinary process prior to being terminated, by virtue of a collective bargaining agreement.

Thaddeus Byrne, a superintendent responsible for Barrera during his ramp-up period, noted on Barrera's tracking sheet that, despite being given additional training at week five, Barrera had achieved "[n]o real improvement." Byrne observed Barrera was not returning from breaks and lunch in a timely manner, so he counseled Barrera in an effort to help him increase his EWE numbers.

On April 22, 2018—during week eight—Barrera claimed he sprained his ankle as a result of a workplace accident. Barrera explained that one of the foreman (whose name he could not recall) backed a forklift into him, hitting his ankle. He did not immediately report this workplace injury to his supervisor (as required by Albertsons policy), but instead went back to work for about an hour-and-a-half.

On April 24, 2018, Barrera called Albertsons to report he would not be coming to work that day because he had sustained a workplace injury. Thereafter, he went to an urgent care clinic and obtained a note excusing him from work for the period between April 24 and April 29, 2018.[2]

Surprised by Barrera's failure to notify a supervisor immediately following his injury, an Albertsons supervisor called Barrera to find out what had happened. Barrera was advised he needed to come in to fill out paperwork, and to be seen at a clinic that handled worker's compensation injuries sustained at the Brea distribution center.

---

[2] Barrera worked the remainder of this week at his Garcoa job and continued working at Garcoa during much of the time he was on worker's compensation leave of absence from Albertsons.

The physician at the clinic told Barrera that his ankle was sprained, that he was going to be taken off work, that he could not do any work requiring him to stand for long periods of time, and that an electronic note would be sent directly to Albertsons from the clinic excusing him from work from April 24 to April 29, 2018. After considering this development, Albertsons concluded that Barrera's work restrictions could not be accommodated as an order selector. Barrera was told he was being placed on total temporary disability leave as an accommodation through May 2, 2018.

While off work on temporary disability, and due to the physically-demanding nature of all of the entry level jobs at the Brea distribution center, Barrera also agreed that there was not *any* position at Albertsons he thought he could perform given his injury and restrictions. Barrera continued to speak with the doctor about when he could return to work, but was told he needed to remain off the Albertsons job.

On May 11, 2018, Barrera's disability leave was extended for approximately another month through June 3, 2018, because, although he could now tolerate more weight on his injured ankle, Barrera was nonetheless required to wear an ankle boot and use a cane. As Albertsons explained, order selectors must ascend and descend forklifts, and doing so while wearing an ankle boot presented a safety hazard.

Barrera did not return to work by the stated deadline. However, one day later—on May 31, 2018—he returned to the *clinic* whereupon he was told that he no longer needed an ankle boot and was cleared to return to work at full duty without restrictions. Yet, he still did not return to his Albertsons employment.

On Monday, June 4, 2018, Albertsons management exchanged emails indicating that, despite being cleared to return to work, Barrera neither appeared nor otherwise contacted Albertsons. A manager called Barrera that day, and Barrera indicated he would return the following day.

On June 5, 2018, Albertsons management decided that they would initiate the termination process for Barrera "[b]ased on his [EWE] production numbers," achieved prior to his leave of absence. On June 6, Barrera arrived late to work. Albertsons terminated his employment the following day for failure to meet his production expectations.

## B.    Complaint

On November 14, 2018, Barrera filed the operative complaint against Albertsons, alleging the following causes of action under the FEHA: (1) disability discrimination; (2) failure to accommodate a physical disability; (3) failure to engage in the interactive process; (4) wrongful discharge for exercise of FEHA rights and retaliation; and (5) wrongful termination in violation of public policy.

## C.    Trial Court's Ruling on Albertsons' Motion for Summary Judgment

On July 2, 2020, Albertsons moved for summary judgment.

On August 31, 2020, Barrera conceded the motion as to causes of action one, four, and five, but opposed summary judgment on the second and third causes of action. He also objected to portions of a declaration submitted by Byrne.

Citing Barrera's concessions, the trial court granted summary judgment as to the first, fourth, and fifth causes of action.

With respect to the second cause of action for failure to accommodate, the trial court granted the motion, finding Barrera could not have performed the essential functions of the job while he had the work restrictions of using an ankle boot and cane, and that Barrera had not proposed any reasonable accommodation other than extending his probationary time following his return to work in order to reach the required EWE performance standards, which the court found Albertsons was not required to do.

With respect to the third cause of action for failure to engage in the interactive process, the trial court granted the motion, finding Barrera had been given his leave as an accommodation, that he was not capable of performing his job "with a reasonable accommodation" while he was on leave, and that there was no other request for accommodation during the time period Barrera was injured.

The trial court overruled Barrera's objections to a declaration submitted by Byrne, explaining that the basis Barrera cited for its objection—failure to cooperate during discovery—"is not a proper evidentiary objection."

Barrera timely appealed.

## DISCUSSION

### A. Standard of Review and Governing Law

A " 'motion for summary judgment should be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 234.) A defendant "meets [its] burden upon a motion for summary judgment or summary adjudication if that party has proved 'one or more elements of the cause of action . . . cannot be

8

established, or that there is a complete defense to that cause of action.' " (*Ibid.*, quoting Code Civ. Proc., § 437c, former subd. (o)(2).)

Appellate courts review appeals from judgments entered after summary judgment *de novo.* (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1245.)

**B.  The Second Cause of Action Was Properly Dismissed**

1.  *Applicable Law*

A person's right to hold employment without discrimination based on a physical disability is protected by the FEHA. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984.) Government Code section 12940 sets forth a number of unlawful employment activities. Subdivision (m)(1) of that section makes it unlawful "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee."

The elements of a cause of action for failure to accommodate a disability under the FEHA are (1) the plaintiff has a disability under the FEHA or was regarded as having a disability, (2) the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) the employer failed to reasonably accommodate the plaintiff's disability. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009-1010.)[3],[4]

---

[3] Although probationary employees can ordinarily be terminated without good cause, notice or a hearing, their probationary status does deprive them of all their FEHA protections. (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 719, 724, 728, 732.)

[4] For the purposes of the FEHA, " 'Essential functions' means the fundamental job duties of the employment position the

"In analyzing an employee's claim for unlawful discrimination under the FEHA, California courts have adopted the three-stage, burden-shifting test the United States Supreme Court established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 . . . ." (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 964.)

"The burdens and order of proof . . . shift under the *McDonnell Douglas* test when an employer defendant seeks summary judgment. [Citations.] An employer defendant may meet its initial burden on summary judgment, and require the employee plaintiff to present evidence establishing a triable issue of material fact, by presenting evidence that either negates an element of the employee's prima facie case, *or establishes a legitimate nondiscriminatory reason for taking the adverse employment action against the employee.*" (*Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 966, italics deleted and added.) " '[T]o avoid summary judgment [on the second of these two grounds], an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action *was untrue or pretextual*, or evidence the employer *acted with a discriminatory animus*, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citations.]" (*Ibid.*, italics added.)

---

individual with a disability holds or desires. . . ." (Gov. Code, § 12926, subd. (f).)

2.    *Analysis*

Albertsons does not dispute either that Barrera had a disability protected by the FEHA or that he is a qualified individual.  Rather, the disputed issue is whether Albertsons failed to reasonably accommodate Barrera's disability.  In this regard, Barrera does not claim a failure to accommodate during the time his ankle was actually injured.  Instead, he posits that, once he had fully recovered and returned to work, "a further accommodation [should have been] given," namely, to "extend[ ] the probationary period by the time off work because of the disability."

Barrera relies exclusively on *Hernandez v. Rancho Santiago Community College Dist.* (2018) 22 Cal.App.5th 1187 (*Hernandez*) to support his theory that he was entitled to a period of additional accommodation to improve his performance once he returned from leave.  *Hernandez* involved a probationary community college employee whose performance was required to be evaluated by the district at intervals of three months, seven months, and eleven months.  (*Id.* at p. 1189.)  After successfully completing 12 months of probation, the plaintiff was to be considered a permanent employee under section 88013, subdivision (a), of the Education Code.  (*Hernandez, supra*, at p. 1189.)

The college district failed to review the plaintiff's performance at either the three-month interval or the seven-month mark.  At the eight-month mark, the plaintiff took an approved leave of absence for surgery to repair a work-related injury, which required a three-to-four-month recovery period.  (*Hernandez, supra*, 22 Cal.App.5th at pp. 1190-1191.)

11

Notwithstanding the college district's approval of the plaintiff's leave request, immediately prior to the 12-month mark—and while she was still on approved leave—the district terminated her employment.  (*Hernandez*, *supra*, 22 Cal.App.5th at pp. 1189, 1191.)  When the plaintiff contacted human resources, she was told she should have known better than to take a leave while on probation.  (*Ibid.*)

The trial court rejected the district's argument that the plaintiff's requested accommodation of additional probationary time was an undue burden that excused its obligation to accommodate the plaintiff under the FEHA because it would necessarily result in plaintiff becoming a permanent employee under the Education Code.  (*Hernandez*, *supra*, 22 Cal.App.5th at p. 1192.)  Instead, the trial court concluded that the district " 'had the option to deduct the time she was not able to work from her one-year probationary period or extend the probationary period by the number of days [the plaintiff] was off work' " as a reasonable accommodation.  (*Id*. at pp. 1191-1192.)

Rightfully concerned over termination of the plaintiff's employment while she was still on leave, was still disabled, and had no prior performance complaints, the Court of Appeal observed that "a finite leave is not a reasonable accommodation when the leave leads directly to termination of employment because the employee's performance could not be evaluated while she was on the leave."  (*Hernandez*, *supra*, 22 Cal.App.5th at p. 1194.)  In affirming the lower court judgment, the Court of Appeal held that both the Education Code and the applicable collective bargaining agreement allowed the district to deduct the plaintiff's leave time from the probationary period.  (*Hernandez*, *supra*, at pp. 1195-1196.)

The facts here stand in stark contrast to *Hernandez.* Barrera had a consistently-poor track record of weekly Albertsons performance evaluations accrued *before* his disability occurred. Indeed, *all* of his evaluations showed that his EWE performance fell below acceptable standards for probationary order selectors. Moreover, after being cleared to return to work, Barrera did not even timely report to work.

Under these circumstances, Albertsons was not required to offer an additional accommodation that was likely to be futile " 'because, even with the accommodation, the employee could not . . . efficiently perform the essential functions of the job.' " (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226, citing *Schmidt v. Safeway Inc.* (D.Or. 1994) 864 F.Supp. 991, 996.)

*Hernandez*, the only case cited for Barrera's claim of error, does not hold that when an under-performing employee returns from leave, an employer is obligated under the FEHA to provide that employee with more time to improve his performance. Accordingly, the trial court correctly found no triable issue of material fact existed as to whether Albertsons' accommodation was pretextual or motivated by discriminatory animus.

## C. The Third Cause of Action Was Properly Dismissed

### 1. *Applicable Law*

Government Code section 12940, subdivision (n), requires employers to engage in a good faith interactive process " 'to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability . . . .' " (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1219.) "Generally, ' "[t]he employee bears the burden of giving the

13

employer notice of the disability." ' " (*Id*. at p. 1222.) "To prevail on a claim under section 12940, subdivision (n) [of the Government Code] for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." (*Scotch v. Art Institute of California, supra,* 173 Cal.App.4th at p. 1018.)

    2.    *Analysis*

Barrera's complaint is that Albertsons management was working "behind the scenes" on ways to terminate him while he was out on disability. Yet, Barrera provides no authority for the proposition that an employer cannot begin to consider termination of a probationary employee who had already accumulated multiple performance warnings. The only legal authority offered by Barrera to demonstrate error is a single, general reference to *Hernandez*—without so much as a pinpoint citation.

California Rules of Court, rule 8.204(a)(1)(B) requires each point in a brief to be supported "by argument and, if possible, by citation of authority." Rule 8.204(a) is based on fairness and efficiency. It is fair because the respondent is entitled to its opportunity to answer the appellant's arguments. (*People v. Roscoe* (2008) 169 Cal.App.4th 829, 840.) It is efficient because we cannot "act as counsel" for either party to appeal and search the record to discover errors not identified by the briefs. (*Fox v. Erickson* (1950) 99 Cal.App.2d 740, 742.) Moreover, failure to substantiate argument with legal authority can make it impossible for an appellant to "affirmatively demonstrate error on the record before the court." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

14

Under the circumstances present here, Barrera's claim of error with respect to the third cause of action has been forfeited. (See *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 ["If no citation 'is furnished on a particular point, the court may treat it as waived' "].)[5]

## D.     The Trial Court Did Not Abuse its Discretion in Overruling Barrera's Objections to the Byrne Declaration

Appellate courts review a trial court's evidentiary rulings on a motion for summary judgment for abuse of discretion. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)

In opposing Albertsons' motion for summary judgment below, Barrera objected to several portions of a declaration submitted by Byrne on the basis that Albertsons "refused discovery of order selector probationary employee EWE percentages who passes [*sic*] and failed for the years 2016, 2017

---

[5] Barrera's challenge also fails on its merits. Barrera conceded there was *no* reasonable accommodation that would have permitted him to perform the essential functions of the order selector job during the time period he was disabled and on leave. It is undisputed that the essential functions of Barrera's job required him to be able to stand and walk, which Barrera could not have done with his medical limitations. Barrera did not believe he could have performed any jobs at the Brea distribution center given his particular restrictions or that he could have safely performed his job duties as an order selector with an ankle boot and cane while his ankle was sprained. Because there was no accommodation that would have permitted Barrera to perform the essential functions of his job while he was disabled, the third cause of action was properly dismissed.

15

and 2018." The trial court ruled that such an objection "is not a proper evidentiary objection." We agree.

During discovery, Barrera requested that Albertsons produce "all documents, papers, books, accounts, letters, photographs, objects and tangible things" that were "related to" all order selectors at the Brea distribution center who failed probation from 2016 through 2018. Albertsons objected on the grounds that the request was overly broad, unduly burdensome, harassing, included within its scope irrelevant documents, and sought private employment documents pertaining to third parties. Barrera did not challenge Albertsons refusal to provide these documents by seeking an order compelling discovery. Instead, Barrera waited until opposing Albertsons' motion for summary judgment.

Barrera argues the trial court erred in overruling its objection because "[l]itigants cannot, on the one hand resist discovery by asserting a privilege, and then seek to introduce selective favorable evidence on the same subject for which they asserted a privilege." Albertsons responds that the trial court properly overruled Barrera's objection because, in order to exclude evidence on the grounds that it was not produced in discovery, the party seeking to exclude such evidence must show that there was an order compelling the discovery or some other deceptive practice that warrants exclusion.

Barrera's own authorities do not support his claim of error. For example, in *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270 the trial court excluded a witness from testifying whose name was not disclosed during discovery and mentioned only during the plaintiff's opening statement. The trial court concluded that the plaintiff's failure to disclose was an act of

16

intentional deception, which exclusion was upheld on appeal. (*Id.* at pp. 274-275.)

In *Deeter v. Angus* (1986) 179 Cal.App.3d 241, the plaintiff sought to introduce a voice recording at trial despite having failed to produce the recording during discovery. The appellate court held the trial court properly excluded the recording because the plaintiff had purposefully concealed the tape. (*Id.* at p. 254 & fn. 5.)

In *Castaline v. City of Los Angeles* (1975) 47 Cal.App.3d 580, the plaintiffs sought to introduce an undisclosed physician's testimony regarding his examination of the plaintiff three days before trial, despite representing in their answers to interrogatories that the plaintiff had fully recovered from their injuries. (*Id.* at pp. 591-592.) The appellate court held the trial court properly excluded the testimony because the plaintiffs had misled defendants during discovery. (*Ibid.*)

Barrera's own cases therefore establish that the party seeking to exclude evidence must show a demonstrable failure to cooperate during discovery in the production of that evidence, or some deceptive practice warranting exclusion. Barrera points to no such evidence. The mere refusal to provide documents in the first instance, standing alone, does not support the drastic order of exclusion of evidence.

The trial court therefore did not abuse its discretion in overruling Barrera's objection to Byrne's declaration.

## DISPOSITION

The order is affirmed.  Albertsons shall recover its costs on appeal.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.