Beverly **DETERESA**, Plaintiff–Appellant,

v.

**AMERICAN BROADCASTING COMPANIES, INC.; Anthony Radziwill, aka Anthony Radziwell, Defendants–Appellees.**

No. 95–56748.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1997.

Decided July 29, 1997.

Neville L. Johnson, Neville L. Johnson & Associates, Los Angeles, CA, for plaintiff-appellant Beverly Deteresa.

Steven M. Perry, Munger, Tolles & Olson, Los Angeles, CA, for defendants-appellees American Broadcasting Companies, Inc. and Anthony Radziwill.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges; WHALEY,* District Judge.

Opinion by Judge O'SCANNLAIN; Partial Concurrence and Partial Dissent by Judge WHALEY.

O'SCANNLAIN, Circuit Judge:

We must decide whether a television producer violated laws against eavesdropping when he surreptitiously taped his conversation with a woman who refused to appear on his show.

### I

On June 12, 1994, Nicole Brown Simpson and Ronald Goldman were murdered at Ms. Simpson's Los Angeles home. Shortly after the murders, O.J. Simpson, Ms. Simpson's ex-husband, traveled from Los Angeles to Chicago on American Airlines flight 668. Beverly Deteresa was an attendant on that flight.

On June 19, 1994, Anthony Radziwill, a producer for American Broadcasting Companies, Inc. ("ABC"), came to the door of Deteresa's condominium in Irvine, California. Radziwill told Deteresa that he worked for ABC and wanted to speak with her about appearing on a television show to discuss the flight. Deteresa asked for identification, and Radziwill showed her an ABC picture I.D. Deteresa initially told Radziwill that she was not interested in appearing on the show. She did reveal, however, that she was "frustrated" to hear news reports about the flight

---

* The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Wash-ington, sitting by designation.

that she knew were false. She informed Radziwill, for instance, that contrary to the reports she had heard, Simpson had not kept his hand in a bag during the flight. She also told Radziwill how many passengers had sat in first class and in which seat Simpson had sat. Before Radziwill left, Deteresa told him that she would "think about" appearing on his show.

Radziwill called Deteresa the next morning, June 20, 1994. He asked her again if she would go on camera. When Deteresa declined, Radziwill told her that he had audiotaped their entire conversation the previous day. He also had directed a cameraperson to videotape them from a public street adjacent to Deteresa's home. Deteresa hung up on Radziwill and told her husband, Matthew Deteresa, what had happened. Matthew Deteresa called Radziwill and told him that his wife did not want ABC to broadcast the videotape. Radziwill replied that ABC did not need consent to broadcast the videotape. Matthew then spoke with someone at ABC named "Doc." Matthew asked either Doc or Radziwill not to broadcast the Deteresas' address, Beverly's name, or the audiotape.

That night, ABC broadcast a five-second clip of the videotape on a program called "Day One." Simultaneous to the clip, an ABC announcer stated that "the flight attendant who served Simpson in the first class section told 'Day One' that she did not, as widely reported, see him wrap his hand in a bag of ice." ABC did not broadcast any portion of the audiotape.

Deteresa filed a complaint in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332, against ABC and Radziwill, alleging five causes of action: (1) unlawful eavesdropping on or recording of confidential communications in violation of Cal.Penal Code § 632(a); (2) physical intrusion on solitude or into private affairs; (3) violation of federal eavesdropping statute, 18 U.S.C. §§ 2511 & 2520; (4) fraud and conspiracy to commit fraud; and (5) unfair business practices. The district court granted summary judgment to ABC and Radziwill on all five causes of action. Deteresa timely appeals.

## II

Deteresa's first cause of action alleges that ABC and Radziwill violated the California eavesdropping statute when Radziwill audiotaped his conversation with Deteresa.

California Penal Code section 632(a) provides:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished....

Cal.Penal Code § 632(a). Section 637.2(a) permits a civil action against a person who violates the eavesdropping statute. *Id.* § 637.2(a).

■ What the parties dispute is whether Radziwill audiotaped a "confidential communication." If the communication between Radziwill and Deteresa was not confidential, section 632(a) does not apply. Section 632(c) defines "confidential communication" as

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

*Id.* § 632(c). "Application of the statutory definition of 'confidential communication' turns on the reasonable expectations of the parties judged by an objective standard and not by the subjective assumptions of the parties." *O'Laskey v. Sortino,* 224 Cal. App.3d 241, 273 Cal.Rptr. 674, 677 (1990) (citation omitted).

■ California courts have stated two competing formulations of what a party must reasonably expect for a communication to be

confidential. In *Frio v. Superior Court*, 203 Cal.App.3d 1480, 250 Cal.Rptr. 819 (1988), the California Court of Appeal explained that "under section 632 'confidentiality' appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." *Id.* 250 Cal.Rptr. at 824. The court acknowledged, however, that confidentiality could be construed "more narrowly by defining it as a reasonable expectation that the content of the communication has been entrusted privately to the listener." *Id.* In *O'Laskey v. Sortino*, the Court of Appeal adopted the narrower construction, "distilling" from *Frio* and other cases "the basic rule that the statute means what it says": courts must examine whether either party "reasonably expected, under the circumstances . . ., that the conversation would not be divulged to anyone else." *O'Laskey*, 273 Cal.Rptr. at 677.

The Court of Appeal returned to *Frio*, however, in *Coulter v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 28 Cal.App.4th 923, 33 Cal.Rptr.2d 766 (1994): "[T]hat the subject matter might be later discussed has no bearing on whether section 632 has been violated." *Id.* 33 Cal.Rptr.2d at 771. *Coulter* went on to restate *Frio*'s construction that confidentiality requires nothing more than a reasonable expectation that no one is listening in. *Id.*[1]

■ The California Supreme Court has not visited these conflicting lines of cases. "When a decision turns upon applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir.1997) (citation omitted). "[W]e must use our best judgment to predict how that court would decide it." *Id.* (citation omitted).

■ We predict that the California Supreme Court would adopt the *O'Laskey* standard, not the *Frio* standard. In construing a statute, the California Supreme Court "turns first," as it should, "to the words themselves for the answer." *Lundquist v. Reusser*, 7 Cal.4th 1193, 31 Cal.Rptr.2d 776, 782, 875 P.2d 1279 (1994) (internal quotation marks and citation omitted). Where the plain meaning of the statute is clear, "courts will not interpret away clear language in favor of an ambiguity that does not exist." *People v. Coronado*, 12 Cal.4th 145, 48 Cal.Rptr.2d 77, 79, 906 P.2d 1232 (1995) (internal quotation marks and citation omitted), *cert. denied*, —— U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 57 (1996).

The problem with *Frio* is that it transforms a specific exclusion to the definition of "confidential communication" into the definition itself. The first clause of section 632(c) explains that " 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. . . ." Cal.Penal Code § 632(c). If, therefore, neither party reasonably expects the communication to be confined to the parties, it is not confidential.

[5] The second clause of section 632(c) goes on specifically to exclude communications "made in a public gathering . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal.Penal Code § 632(a). Thus, where someone reasonably expects that the communication may be overheard, the communication is not confidential. *Frio* implies, however, that unless someone reasonably expects that the communication will be overheard, the communication is confidential. That interpretation renders the first clause of section 632 surplusage. Under the terms of the statute, if someone does not reasonably expect the conversation to be confined to the parties, it makes no difference under the statute whether the person reasonably

---

1. A simple example demonstrates how differently *Frio /Coulter* and *O'Laskey* each construe section 632(a). Suppose X and Y are hiking in the woods. Y offers to pay X the $5.00 that Y owes X. X tells Y to pay the money to Z, because X owes Z $5.00. When X finds out that Y had taped the conversation, he sues Y. Under *Frio*, X wins because in the wilderness he had a reasonable expectation that no one overheard their conversation. Under *O'Laskey*, Y wins, because X had a reasonable expectation that Y would divulge the conversation to Z.

expects that another is listening in or not. The communication is not confidential. In California, statutes are construed to give effect to all of their parts and to avoid rendering some words surplusage. *Woosley v. California,* 3 Cal.4th 758, 13 Cal.Rptr.2d 30, 39, 838 P.2d 758 (1992). *Frio,* in effect, reads the first clause of section 632 out of the statute. Because *Frio* stands at odds with the plain language of the statute, we predict that the California Supreme Court would reject it in favor of *O'Laskey.*

■ Applying *O'Laskey,* we must ask whether Deteresa had an objectively reasonable expectation that the conversation would not be divulged to anyone else. ABC and Radziwill contend that there is no triable issue as to the fact that Deteresa had no such expectation-Radziwill immediately revealed that he worked for ABC and wanted Deteresa to appear on television to discuss the flight; Deteresa did not tell Radziwill that her statements were in confidence; Deteresa did not tell Radziwill that the conversation was just between them; and Deteresa did not request that Radziwill not share the information with anyone else. Radziwill, for his part, did not promise to keep what Deteresa told him in confidence. We agree, from these undisputed facts, that no one in Deteresa's shoes could reasonably expect that a reporter would not divulge her account of where Simpson had sat on the flight and where he had or had not kept his hand.[2]

Deteresa and Radziwill also chatted about Radziwill's famous relatives, including John F. Kennedy, Jr. At some point they discussed what ABC could do to make Deteresa more comfortable about coming down to the studio to be taped for an interview. Deteresa contends that Radziwill's casual demeanor led her to believe that the conversation was "off the record." Casual or not, these parts of conversation were about Radziwill's famous relatives and about what ABC was willing to do to make Deteresa more comfortable. No reasonable juror could find that Deteresa reasonably expected that a reporter would not divulge these parts of the conversation to anyone else.

The district court thus properly granted summary judgment as to Deteresa's section 632(a) cause of action.

### III

Deteresa's second cause of action alleges that ABC and Radziwill tortiously invaded her privacy by intrusion into seclusion.

California has adopted the Restatement definition of the intrusion into seclusion privacy tort: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. National Broadcasting Co.,* 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, 678 (1986) (quoting Restatement (Second) of Torts § 652B).

■ "While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion." *Id.* "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Sanders v. American Broadcasting Cos.,* 52 Cal.App.4th 543, 60 Cal.Rptr.2d 595, 598 (1997).

> In determining the "offensiveness" of an invasion of a privacy interest, common law courts consider, among other things: "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."

*Hill v. National Collegiate Athletic Ass'n,* 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 850, 865 P.2d 633 (1994) (quoting *Miller,* 232 Cal.Rptr. at

---

**2.** Deteresa testified at her deposition that she had heard media reports about the flight that she knew were false, and that other members of the media had attempted to contact her before Radziwill came to her door.

678). Applying this standard, the district court concluded that neither the videotaping nor the audiotaping tortiously invaded Deteresa's privacy as a matter of law. We agree.

### A

■ With respect to the videotaping, the undisputed material facts show an insubstantial impact on privacy interests. Deteresa does not dispute that she was videotaped in public view by a cameraperson in a public place.[3] The California Court of Appeal addressed a similar situation in *Aisenson v. American Broadcasting Co.*, 220 Cal.App.3d 146, 269 Cal.Rptr. 379 (1990):

> Respondents' camera crew averred that they videotaped appellant from their car, which was parked across the street from his home. They maintain that appellant was in full public view from the street at the time he was videotaped. Appellant claims he could not be seen from the photographer's location unless an enhanced lens was being used. He does not, however, claim that his car and the driveway where he was filmed were outside of public view. Nor has he shown that his home address or his car license plate number were disclosed. At most, the evidence shows that any invasion of privacy which took place was extremely de minimus [sic] because the camera crew did not encroach on appellant's property.

*Id.* 269 Cal.Rptr. at 388. Any invasion of privacy in this case was, likewise, de minimis.

With no dispute that ABC videotaped Deteresa in public view from a public place, broadcast only a five-second clip of the tape, and did not broadcast either her name or her address, no intrusion into seclusion privacy claim lies as a matter of law.

### B

■ With respect to the audiotaping, the undisputed material facts also do not demonstrate a sufficiently offensive invasion of privacy for an intrusion claim to lie. This court,

as *Miller* explains, must make a "preliminary determination of 'offensiveness' . . . in discerning the existence of a cause of action for intrusion." *Miller*, 232 Cal.Rptr. at 678.

This is not, contrary to Deteresa's contention, a case in which a news team entered someone's bedroom without authorization to film a rescue attempt by paramedics. *Miller, supra.* Nor is it a case in which someone gained entrance into another's home by subterfuge. *Dietemann v. Time, Inc.*, 449 F.2d 245 (9th Cir.1971). Nor is it a case in which a private investigator obtained entrance into a hospital room by deception. *Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654, 109 Cal.Rptr. 269 (1973).

Rather, Deteresa spoke voluntarily and freely with an individual whom she knew was a reporter. He did not enter her home, let alone did he enter by deception or trespass. There is no evidence that any intimate details of anyone's life were recorded. No portion of what was recorded was ever broadcast.

The district court properly concluded from these undisputed facts that the intrusion was not sufficiently offensive to state a common law intrusion into seclusion privacy claim.

### IV

■ Deteresa's third cause of action alleges that ABC and Radziwill violated the federal eavesdropping statute, 18 U.S.C. §§ 2511 and 2520, when Radziwill audiotaped his conversation with Deteresa. Section 2511 prohibits the interception and disclosure of oral communications in certain circumstances, and § 2520 provides a civil action against a person who violates that law.

The district court granted summary judgment on this cause of action to ABC and Radziwill pursuant to § 2511(2)(d):

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given

---

**3.** Deteresa has presented no specific evidence to support her contention that she could only be seen with a "high-powered lens."

prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. 18 U.S.C. § 2511(2)(d). The parties do not dispute that Radziwill was a party to the communication which he audiotaped. Thus, only if he recorded the conversation "for the purpose of committing any criminal or tortious act" could he violate section 2511. Deteresa has presented no evidence that this was Radziwill's purpose.[4]

We thus agree with the district court that ABC and Radziwill are entitled to judgment as a matter of law on Deteresa's federal eavesdropping cause of action.

## V

■ Deteresa's fourth cause of action alleges that ABC and Radziwill committed fraud and conspiracy to commit fraud by failing to disclose that Radziwill was audiotaping and videotaping her.

■ In California,

[t]here are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins,* 52 Cal.App.4th 326, 60 Cal.Rptr.2d 539, 543 (1997) (internal quotation marks and citation omitted). The first circumstance requires a fiduciary relationship; each of the other three "presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *Id.* Such relationships "are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances." *Id.* 60 Cal.Rptr.2d at 543–44. Examples are "seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *Id.* (citation omitted).

The district court concluded that ABC was entitled to summary judgment on Deteresa's fraud claim because she presented no evidence that she and Radziwill shared the requisite relationship for Radziwill to have a duty to disclose that he was taping her. We agree. Deteresa has presented no evidence that she and Radziwill shared any such relationship.

Deteresa further contends that Radziwill had a duty to disclose that he was taping her because federal and state law prohibits unauthorized taping of confidential communications. California courts, however, have rejected this basis for fraud. In *LiMandri,* for example, the Court of Appeal refused to recognize a fraud action for failure to disclose the intention to commit a wrongful act:

*LiMandri*'s theory, in essence, is that Judkins owed him a duty to disclose his intention to commit an intentional tort. Although inferentially, everyone has a duty to refrain from committing intentionally tortious conduct against another, it does not follow that one who intends to commit a tort owes a duty to disclose that intention to his or her intended victim. The general duty is not to warn of the intent to commit wrongful acts, but to refrain from committing them. We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort.

*Id.* 60 Cal.Rptr.2d at 544 (internal quotation marks and citation omitted).

Thus, even if the audiotaping and videotaping were wrongful under tort principles or a statute, ABC is not liable for failing to dis-

---

**4.** Deteresa contends that "Radziwill and ABC were by the taping committing the aforesaid crimes and torts." This argument begs the question. For this claim to survive summary judgment, Deteresa had to come forward with evidence to show that Radziwill taped the conversation for the purpose of violating Cal.Penal Code § 632, for the purpose of invading her privacy, for the purpose of defrauding her, or for the purpose of committing unfair business practices. The record is devoid of any such evidence.

close its intention to commit those wrongful acts. The district court thus properly granted summary judgment to ABC and Radziwill on the fraud cause of action.

## VI

■ Finally, Deteresa's fifth cause of action alleges that ABC and Radziwill committed unfair business practices under Cal. Business and Professions Code § 17000 et seq.

Deteresa argues that she would prove at trial that this case "is not an isolated incident, the company is engaged in a massive scale in criminal and tortious conduct." To withstand summary judgment, however, a party must designate "specific facts showing that there is a genuine issue for trial" by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). While Deteresa has presented several newspaper articles and television program transcripts to demonstrate that ABC uses hidden cameras, Deteresa has failed to come forward with specific facts to support her claim that ABC is engaged in a "massive scale" of crimes and torts. Summary judgment therefore was appropriate.

## VII

For the foregoing reasons, the district court properly granted summary judgment as to Deteresa's claims for unlawful eavesdropping in violation of the California Penal Code, tortious invasion of privacy, violation of the federal eavesdropping statute, fraud, and unfair business practices.

AFFIRMED.

WHALEY, District Judge, concurring in part and dissenting in part:

I concur in Parts III, IV, V, and VI of the majority's opinion. I respectfully dissent from Part II because I do not agree with the majority's interpretation of the term "confidential communication" or its application of that interpretation to the facts of this case.

## I.

A court's inquiry into the meaning of a statutory term is controlled, of course, by the meaning that the enacting legislature intended to give that term. As the majority notes, the best indicator of that intent is the actual language approved by those legislators. I do not agree, however, that the interpretation of "confidential communication" embraced by the majority is the meaning that the California State Legislature ("Legislature") intended to give that term when it enacted the California Invasion of Privacy Act ("Privacy Act"), Cal.Penal Code §§ 630–37.6.

As an initial matter, I am not convinced the Privacy Act exhaustively defines the term "confidential communication." On its face, the Privacy Act does not purport to "define" or exhaustively trace the legal parameters of this term. Instead, the provision that addresses the meaning of "confidential communication" merely provides examples of circumstances the Legislature deemed relevant to the determination of whether a communication is confidential. Cal.Penal Code § 632(c) ("The term 'confidential communication' *includes* any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but *excludes* . . . .") (emphasis added). This approach—describing a limited number of categories of circumstances where communications are presumptively confidential or non-confidential—leaves open the question of whether other categories of relevant circumstances may exist. Treating the first clause of § 632(c) as an exhaustive definition of "confidential communication" closes the door that the Legislature left open for the further development of this definition.[1]

---

1. At times, California's courts have also described § 632(c) as "defining" the term "confidential communication," though they have not explained their basis for this conclusion. *See, e.g., O'Laskey v. Sortino*, 224 Cal.App.3d 241, 273 Cal.Rptr. 674, 677 (1990). While it is possible that these courts and the majority rely on the well-known maxim *"expressio/inclusio unius est exclusio alterius,"* application of this narrowing interpretive device to § 632(c) is inappropriate given the broad statement of remedial intent that is expressed in the Privacy Act. *See* Cal.Penal

2

I also do not agree with the majority's prediction as to which, if any, of the California Court of Appeal's differing interpretations of "confidential communication" the Supreme Court of California would adopt. Before addressing this issue, though, it is worthwhile to outline the positions that the Court of Appeal has taken on this question.

As a starting point, the Court of Appeal's decisions agree that the determination of whether or not a communication is confidential is controlled by the reasonable expectations of the parties, not their subjective assumptions. *O'Laskey v. Sortino*, 224 Cal. App.3d 241, 273 Cal.Rptr. 674, 677 (1990). This conclusion is supported by the text of the statute. *See* Cal.Penal Code § 632(c) ("The term 'confidential communication' includes any communication carried on in *circumstances as may reasonably indicate* . . . .") (emphasis added).

Beyond this point, agreement breaks down and the reported decisions diverge as to what a party must reasonably expect. Two of these approaches have been identified by the majority: 1) whether the party reasonably expected that the communication would not be divulged, *O'Laskey*, 273 Cal.Rptr. at 677; and, 2) whether the party reasonably expected that no one was listening in on, overhearing, or recording the conversation, *Frio v. Superior Court*, 203 Cal.App.3d 1480, 250 Cal.Rptr. 819, 824 (1988). A third, additional strain is also discernible in these decisions: whether the "circumstances . . . reasonably indicate that any party to the communication *desires* [the communication] be confined to such parties, or . . . that the parties to the communication may reasonably expect that the communication may be recorded." *Deeter v. Angus*, 179 Cal.App.3d 241, 224 Cal. Rptr. 801, 807, (1986) (citing *Warden v. Kahn*, 99 Cal.App.3d 805, 160 Cal.Rptr. 471, 477 (1979)) (emphasis added). *See also Friddle v. Epstein*, 16 Cal.App.4th 1649, 21 Cal. Rptr.2d 85, 90–91 (1993) (focusing on whether evidence indicated parties desired confidentiality).

Neither the *O'Laskey* nor the *Frio* standards are sufficiently faithful to the text of § 632(c) to warrant their adoption as a definitive interpretation of "confidential communication." The *Frio* standard's deficiencies are ably detailed in the majority opinion. The problem with the *O'Laskey* standard is that it is subject to the very same faults. As already discussed, the *O'Laskey* standard elevates an example of a confidential communication to the status of definition, the only difference with *Frio* being that a different example is favored. Additionally, like the *Frio* standard, the *O'Laskey* standard renders a critical portion of the statutory text surplusage. Specifically, *O'Laskey* ignores the Legislature's decision to focus on whether the circumstances indicate one of the parties "desires" that the communication not be divulged. Instead, *O'Laskey* reads into the statute a requirement that it be reasonable for the party to "expect" that the communication would not be divulged.

The *O'Laskey* standard's subtle transformation of the text of § 632(c) works a substantial change in the scope of the Privacy Act's protection of California citizens from the secret recording of their conversations. Most importantly, this shift transfers control over the confidentiality of the communication from the speaker to the listener or solicitor of the communication. For example, under the *O'Laskey* approach, a reporter for a tabloid notorious for breaking promises not to divulge information would have free rein to secretly tape newsworthy conversations because it would be unreasonable to expect the reporter not to divulge those statements. In these same circumstances, however, § 632's text suggests that a cause of action should exist because the express statement of a desire for non-divulgence would "reasonably indicate" that desire.

There are a number of reasons why the Legislature might decide to place control over confidentiality in the hands of the speaker rather than the listener or solicitor of the communication. One is the distinction

Code § 630 (Privacy Act is intended to remedy "a serious threat to the free exercise of personal liberties" and "protect the right of privacy of the people of this state."). *See also People v. Reed,*

13 Cal.4th 217, 52 Cal.Rptr.2d 106, 112, 914 P.2d 184 (1996) (*expressio unius* maxim inapplicable where contrary to legislative intent).

between the privacy interests that are implicated by secondhand repetition of a communication as opposed to surreptitious recording or monitoring. *See, e.g., Ribas v. Clark,* 38 Cal.3d 355, 212 Cal.Rptr. 143, 146, 696 P.2d 637 (1985) (in bank) (Privacy Act creates distinction between the risk that private comments will be betrayed by the listener and the infringement on privacy that attends their secret taping). As the Court of Appeal has explained:

> In the former situation [i.e., secondhand repetition] the speaker retains control over the extent of his immediate audience. Even though that audience may republish his words, it will be done secondhand, after the fact, probably not in its entirety, and the impact will depend on the credibility of the teller. Where electronic monitoring is involved, however, the speaker is deprived of the right to control the extent of his own firsthand dissemination.... In this regard participant monitoring ... den[ies] the speaker a most important aspect of privacy of communication, the right to control the extent of first instance dissemination of his statements.

*Warden,* 160 Cal.Rptr. at 476 (cited with approval in *Ribas,* 212 Cal.Rptr. at 146, 696 P.2d 637).

The *O'Laskey* approach, as it is applied here, reduces this "important aspect of privacy of communication" to a nullity when one of the parties to a communication is a reporter. The result is a de facto rule that individuals who talk to reporters presumptively consent to the secret recording of those conversations.[2] In some circumstances, such as the tabloid reporter example, this presumption is effectively irrebuttable. It is difficult, if not impossible, to reconcile this result with the Legislature's clearly expressed intent to "protect the right of privacy of the people of this state." Cal.Penal Code § 630. *See also Warden,* 160 Cal.Rptr. at 474 ("The dominant objective of the [Privacy Act] ... is to protect the privacy of the people of this state.") (internal quotation omitted). Creation of such a rule might be sound as a matter of

public policy given that increased recording would presumably enhance the accuracy of information disseminated to the public. As the Supreme Court of California has remarked, however,

> to the extent that the broad language and purposes of the Privacy Act may encompass conduct that some people believe should not be proscribed, their remedy is to ask the Legislature to draft a statute they find more palatable.

*Ribas,* 212 Cal.Rptr. at 147 n. 4, 696 P.2d 637.

For these reasons, I believe that if the Supreme Court of California were to interpret § 632(c) as exhaustively defining "confidential communication," it would adopt an interpretation that has greater fidelity to the text of § 632(c) than the *O'Laskey* standard. In my view, the focus of our inquiry should be whether Deteresa had a reasonable expectation that Radziwill knew she did not want her statements divulged, not whether she had a reasonable expectation he would actually keep her confidence.

## II.

Even if the *O'Laskey* standard were the proper approach to apply in this case, a genuine issue would remain for trial. The California courts agree that the issue of whether a communication is confidential is a question of fact that normally should be left to the fact finder. *Warden,* 160 Cal.Rptr. at 477–78. Because this issue was resolved on summary judgment, the issue of whether Deteresa has proven that she meets the *O'Laskey* standard is not before us. Instead, our task is to determine whether the facts, taken in the light most favorable to Deteresa, are sufficient to give rise to an inference that she had a reasonable expectation that Radziwill would not disseminate her statements.

Presumably, this inquiry must employ the familiar "totality of circumstances" approach found in other areas of the law that attempt to determine an individual's reasonable ex-

---

**2.** It may be that such a rule would be proper under § 632(c)'s exclusion of "circumstance[s] in which the parties to the communication may reasonably expect that the communication may

be ... recorded." Cal.Penal Code. § 632(c). This exclusion, however, does not appear to be the basis for the decisions of the majority or the district court.

pectations, *cf.* *United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir.1986). The majority's analysis looks to the circumstances surrounding the Deteresa–Radziwill conversation but appears to give dispositive weight to the fact that Radziwill identified himself to Deteresa as an employee of ABC. While a plaintiff certainly has a more difficult case under *O'Laskey* when her confidant is a member of the news media, it is not impossible to prove a reasonable expectation of confidentiality in a conversation with a reporter.[3] Certainly, news correspondents' family members can have such an expectation as to intimate matters, and it is an accepted convention in the news media that the contents of a communication made "off the record" or on "deep background" cannot be divulged unless gained from another source. That said, the fact that Deteresa's statements were not expressly conditioned on non-dissemination, and the fact that she assumed Radziwill was a reporter, work to her disadvantage.

The nature of the conversation obviously is also important. As the majority notes, Deteresa's discussion of previously unknown information about one of the top news stories of the day certainly cuts against the reasonableness of an expectation those comments would not be divulged. There was more to the conversation than these statements, however. At the outset of the conversation, for example, Radziwill told Deteresa that he was approaching her to see if she would be willing to appear on his television program, not that he wanted interview her at that time. Deteresa refused this invitation and a conversation ensued that focused principally on whether Radziwill and ABC could overcome this refusal. Deteresa contends that she was lulled by Radziwill's "casual demeanor" into believing that her subsequent comments about her flight were "off the record," emphasizing that Radziwill did not attempt to interview her, was not attended by a visible camera crew or recording device, and that he did not take any notes of their conversation. Additionally, Deteresa points to the fact that their conversation included a discussion of the importance of individual privacy, including a general conversation relating to the invasions of privacy experienced by Radziwill's famous relatives. While these factors do not amount to a compelling case, the conversational context in which Deteresa made her comments to Radziwill, viewed in the light most favorable to her, supports the position that she reasonably expected those comments would not be disseminated.

The location of the conversation is also relevant. Here the conversation occurred on Deteresa's doorstep after she was unexpectedly called to the door. There is certainly a distinction between the comments that one may make to a reporter in a public forum as opposed to those that are made on the threshold of one's home. Moreover, the final clause of § 632(c) expressly recognizes that whether a statement is likely to be overheard is a relevant consideration in the determination of whether the statement is confidential. While the majority correctly concludes in Part III *supra* that Deteresa did not have a reasonable expectation of privacy as to her image because she could be readily seen from the street, the record does not support a conclusion that her comments could be overheard from a public place. Because of the greater expectation of privacy that inheres from the home, and the fact that the record does not establish that Deteresa's comments could be heard from the street, this factor weighs in Deteresa's favor.

Additionally, it is undisputed that Deteresa's comments were secretly recorded from the very moment she opened her door. Thus, the privacy interest that California recognizes as inhering in the surreptitious recording of statements was infringed before Deteresa was given an opportunity to determine whether her comments were on the record. Unless § 632 countenances a presumption that all communications made from one's doorstep to a media representative may be secretly recorded, Radziwill's taping of Deteresa's statements comments violated § 632 at least until the circumstances indicat-

---

**3.** Although Radziwill was a producer, not a reporter, the record indicates Deteresa assumed he was a reporter.

ed she reasonably expected her comments would be reported.

Finally, the facts of *O'Laskey* do not compel the majority's conclusion. In *O'Laskey*, a private investigator taped a telephone conversation with the plaintiff in which the investigator identified himself as a television show producer and told the plaintiff that he was eligible to win a $100,000 prize in a televised drawing if he answered certain questions. 273 Cal.Rptr. at 675. In response, the plaintiff "eagerly" answered the investigator's questions. *Id.* 273 Cal.Rptr. at 678. In contrast, Deteresa refused to appear on Radziwill's show and responded to his substantive questions after a general discussion of her concerns for her privacy. These distinctions are sufficient to allow for an inference that Deteresa reasonably expected her comments would not be disseminated.

In sum, though Deteresa's case is not particularly strong, there is sufficient evidence in the record to permit a reasonable juror to infer from the circumstances of her conversation with Radziwill that she desired and reasonably expected her communications would not be disseminated.

### III.

The purpose of California's Privacy Act was to sharply restrict the legality of wiretapping, eavesdropping, and surreptitious recording, thereby remedying "a serious threat to the free exercise of personal liberties" and "protect[ing] the right of privacy of the people of this state." Cal.Penal Code § 630. The majority's interpretation and application of § 632 frustrates that intent by allowing media representatives to approach persons at their homes, uninvited, and secretly record their statements without attempting to secure permission. Because I believe that a genuine issue remains for trial on the question of whether such conduct was permissible in this case, I respectfully dissent.