132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Suzette ARIPA, Defendant-Appellant.
 No. 97-30071.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1997.**
Decided Dec. 22, 1997.
 
 Appeal from the United States District Court for the Eastern District of Washington; No. CR-96-00164-RHW; Robert H. Whaley, District Judge, Presiding.
 Before: SNEED, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Suzette Aripa appeals her conditional guilty plea conviction for distributing cocaine, in violation of 21 U.S.C. § 841(a)(1). Aripa contends that the district court erred by denying her motion to suppress tape recorded conversations between her and a confidential informant and her motion to suppress her confession. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 A. Tape Recordings
 
 3
 Aripa contends that, under the Assimilative Crimes Act ("ACA"), the district court should have suppressed tape recorded conversations between her and Janice Stuck, a confidential informant, because the conversations were recorded without Aripa's consent. This contention lacks merit.
 
 
 4
 We review de novo both the denial of a motion to suppress, see United States v. Kemmish, 120 F.3d 937, 939 (9th Cir.1997), and whether the ACA incorporates a particular state law, see United States v. Roberts, 845 F.2d 226, 228 (9th Cir.1988). Although Congress has not prohibited the specific act Stuck and the tribal officer committed, it has proscribed "the generic conduct in which they engaged in such a way as to indicate an intent to '(cover) the field with uniform federal legislation.' " See United States v. Smith, 574 F.2d 988, 990 (9th Cir.1978) (citation omitted). Accordingly, the ACA does not apply. See Williams v. United States, 327 U.S. 711, 717-18 (1946).
 
 
 5
 Aripa also argues that Stuck violated the federal wiretapping statute, because Stuck was not acting under color of law when the recording occurred. This contention is meritless.
 
 
 6
 Federal law generally prohibits the interception of oral communications. See 18 U.S.C.A. § 2511(1) (West 1970 & Supp.1997). As relevant here, however, it is not illegal for a person acting without lawful authority to intercept an oral communication, unless the communication is intercepted "for the purpose of committing any criminal or tortious act" in violation of state or federal law. See id. at § 2511(2)(d) (West Supp.1997).
 
 
 7
 Even assuming Stuck was acting without lawful authority, we agree with the district court that the conversation was not intercepted and recorded "for the purpose of committing" a criminal act in violation of the law, but rather was recorded as part of a police investigation. See id.; see also Deteresa v. American Broad. Cos., 121 F.3d 460, 467 (9th Cir.1997). Accordingly, the court correctly denied Aripa's motion to suppress the tape recorded conversations.
 
 B. Confession
 
 8
 Aripa contends that the district court should have suppressed her confession, because she did not knowingly and intelligently waive her Miranda rights. Specifically, Aripa argues that she lacked the mental capacity to waive her rights because she (1) had serious neuropsychological problems; (2) was physically diminished as a result of having sustained a head trauma and diabetic shock the previous day; and (3) was deeply concerned about her children. This contention is meritless.
 
 
 9
 Based on the totality of the circumstances, we conclude that the district court did not clearly err by finding that Aripa knowingly and intelligently waived her Miranda rights. See United States v. Bautista-Avila, 6 F.3d 1360, 1364-65 (9th Cir.1993). Even accepting Aripa's neuropsychological problems and her physical condition, she presented no evidence that those problems prevented her from knowingly and intelligently waiving her rights. Aripa's limited education and intelligence are not sufficient to invalidate her waiver, given "that [s]he indicated that [s]he understood [her] rights after they were explained to [her]." Cf. id. at 1366 (rejecting argument that person who, inter alia, had only sixth grade Mexican education did not knowingly and intelligently waive rights). Although Aripa was obviously concerned about her children, she was responsive and conversant, said that she understood her rights after they were read to her, was willing to waive them, and signed the waiver form which had been read to her. See id.; United States v. Bernard S., 795 F.2d 749, 753 n. 4 (9th Cir.1986) (stating that written waiver, although not dispositive, is strong evidence of valid waiver). Accordingly, the district court correctly denied Aripa's motion to suppress her statement. See Bautista, 6 F.3d at 1366.
 
 
 10
 AFFIRMED.
 
 Confession: Factual Summary
 
 11
 Detective Garvais testified that, before taking Aripa's statement, he read her rights to her. Garvais further testified that Aripa said she understood her rights, said she would waive her rights, and signed a form waiving her rights. Garvais also stated that he was aware of Aripa's medical condition, but that she did not appear to be affected by any medication, he was able to converse with her, and she was responsive, "seemed fine," and spoke "freely and clearly.", He acknowledged that Aripa expressed concern for her children.
 
 
 12
 Aripa, who was approximately thirty years old at the time, testified that she had been a "special ed" student, had dropped out of school in the eighth grade, and had failed her GED test. She explained that she had suffered "diabetic shock" and hit her head on a table the day before giving her statement. Aripa acknowledged that Garvais read her rights to her, that he told her she could talk to an attorney, and that she signed the waiver form. Nonetheless, she asserted that she did not know that she could decline to speak with the police or that she was entitled to a lawyer. She further asserted that she did not know what the form was, and that she signed it only because she thought the police would then let her go home to her children. Aripa stated that she "wasn't in [her] right mind," and that she "didn't think about what [she] was hearing. All I thought about was my children."
 
 
 13
 Aripa also submitted the report of Dr. Dennis Pollack, a clinical psychologist who examined Aripa. Pollack reported that Aripa's IQ of seventy-six placed her in the borderline range of intelligence and that neuropsychological testing revealed a "generalized impairment consistent with either fetal alcohol syndrome or an extended high fever." Pollack's report did not address Aripa's ability to waive her rights.
 
 Tape Recordings
 
 14
 Because the recording occurred on a federal enclave and because state law is adopted as federal law, under the ACA, Stuck and Garvais violated federal law. Accordingly, Aripa argues, suppression is required under 18 U.S.C. § 2518(10)(a)(i).
 
 
 15
 Aripa acknowledges that "wiretap evidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law." United States v. Keen, 508 F.2d 986, 989 (9th Cir.1974).
 
 
 16
 The ACA "establishes a gap-filling criminal code for federal enclaves." United States v. Kiliz, 694 F.2d 628, 629 (9th Cir.1982). "[T]he government can assimilate state law under the ACA only if no act of Congress makes such conduct punishable." United States v. Marcyes, 557 F.2d 1361, 1365 (9th Cir.1977). United States v. Patz, 584 F.2d 927, 930-31 (9th Cir.1978) (once Congress has defined penal offense, there is no reason to believe it has authorized definition to be enlarged by application of state law; cautioning against yielding to urge to make state criminal law the source of federal criminal law, absent showing that Congress intended use state law as source). That the definition of an offense enacted by Congress "results in a narrower scope for the offense than that given to it by the State, does not mean that the congressional definition must give way to the State definition." Williams, at 717-18.
 
 
 17
 Washington law prohibits recording conversations unless all parties consent. See Wash. Rev.Code Ann. § 9.73.030(1)(b) (West 1988). Federal law, on the other hand, requires the consent of only one party to the conversation. See 18 U.S.C. § 2511(2)(c) (1970).
 
 
 18
 Deteresa v. American Broad. Cos., 121 F.3d 460, 467 (9th Cir.1997) (stating that, under section 2511(2)(d), person who was party to audiotaped communication could violate section 2511 only if he recorded conversation for purpose of committing criminal or tortious act).
 
 Confession
 
 19
 Although Aripa also argued in the district court that she did not voluntarily waive her rights, she does not renew that argument on appeal. "A voluntary confession is inadmissible if the accused lacks the mental capacity to make a knowing and intelligent waiver of the right to remain silent and the right to counsel during police interrogation." United States v. Frank, 956 F.2d 872, 876 (9th Cir.1992).
 
 
 20
 We review for clear error the district court's determination that a defendant knowingly and intelligently waived her Miranda rights. See United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir.1993). "[T]he waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1985). The court must examine " 'the totality of the circumstances, including the background, experience, and conduct of the defendant,' " Bautista-Avila, 6 F.3d at 1365 (citation omitted), as well as the defendant's age, education, and intelligence, see United States v. Frank, 956 F.2d 872, 877 (9th Cir.1992).
 
 
 21
 Here, Detective Garvais testified that, before taking Aripa's statement, he read her rights to her. Garvais further testified that Aripa said she understood her rights, said she would waive her rights, and signed a form waiving her rights. Garvais also stated that he was aware of Aripa's medical condition, but that she did not appear to be affected by any medication, he was able to converse with her, and she was responsive, "seemed fine," and spoke "freely and clearly." He acknowledged that Aripa expressed concern for her children.
 
 
 22
 Aripa, who was approximately thirty years old at the time, testified that she had been a "special ed" student, had dropped out of school in the eighth grade, and had failed her GED test. She explained that she had suffered "diabetic shock" and hit her head on a table the day before giving her statement. Aripa acknowledged that Garvais read her rights to her, that he told her she could talk to an attorney, and that she signed the waiver form. Nonetheless, she asserted that she did not know that she could decline to speak with the police or that she was entitled to a lawyer. She further asserted that she did not know what the form was, and that she signed it only because she thought the police would then let her go home to her children. Aripa stated that she "wasn't in [her] right mind," and that she "didn't think about what [she] was hearing. All I thought about was my children."
 
 
 23
 Aripa also submitted the report of Dr. Dennis Pollack, a clinical psychologist who examined Aripa. Pollack reported that Aripa's IQ of seventy-six placed her in the borderline range of intelligence and that neuropsychological testing revealed a "generalized impairment consistent with either fetal alcohol syndrome or an extended high fever." Pollack's report did not address Aripa's ability to waive her rights.
 
 
 24
 Bautista-Avila, 6 F.3d at 1366 (rejecting argument that individual who had no prior experience in American judicial system, had only sixth grade Mexican education, and was manual laborer had not knowingly and intelligently waived rights); see also Bernard S., 795 F.2d at 753 (concluding juvenile voluntarily, knowingly, and intelligently waived rights where, inter alia, police read and explained rights to him, he said he understood rights, and he signed written waiver).
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3