**NISSAN MOTOR CO., LTD.,
et al., Plaintiffs,**

v.

**NISSAN COMPUTER CORPORATION,
Defendant.**

**No. CV 99–12980 DDP.**

United States District Court,
C.D. California.

Jan. 14, 2002.

---

11.  The parties have not raised this issue.

Mark A. Flagel, Daniel Scott Schecter, Michael Jon Lawrence, David J. Schindler, Latham & Watkins, Los Angeles, CA, for Plaintiffs.

Daniel Scott Schecter, Michael Jon Lawrence, Latham & Watkins, Los Angeles, CA, Mark B. Fredkin, Morgan Ruby Schofield Franich & Fredkin, San Jose, CA, Neil D. Greenstein, Robert M. Vantress, San Jose, CA, David H. Martin, Christensen Miller Fink Jacobs Glaser Weil & Shapiro, Los Angeles, CA, David J. Beck, Latham & Watkins, Los Angeles, CA, Bruce R. Fertel, Fertel & Associates, Beverly Hill, CA, Neil D. Greenstein, Robert M. Vantress, San Jose, CA, for Defendant.

## ORDER GRANTING IN PART PLAINTIFFS' EX PARTE APPLICATION

PREGERSON, District Judge.

This matter comes before the Court on the plaintiffs' ex parte application for an

order: (1) compelling Neil Greenstein ("Greenstein"), counsel for the defendant Nissan Computer Corporation ("NCC"), to state whether any conversations with counsel for plaintiffs have been recorded; and (2) prohibiting counsel for NCC from recording any such conversations in the future. After reviewing and considering the materials submitted by the parties, and hearing oral argument, the Court adopts the following order.

## I. Factual Background

The issue of whether Greenstein has tape-recorded conversations with counsel for the plaintiffs Nissan Motor Co., Ltd. and Nissan North American Inc. (collectively "Nissan") first arose in June 2000. At that time, a conflict emerged during a failed mediation attempt regarding what the parties had said during earlier telephone calls concerning their respective positions on settlement. (Schindler Decl. ¶ 4.) Greenstein accused David Schindler ("Schindler"), counsel for Nissan and a partner at the law firm of Latham & Watkins, of misrepresenting what had been said during a prior telephone conversation.[1] Schindler categorically denied Greenstein's accusation. In response, Greenstein told Schindler that Greenstein planned to tape record all future conversations between counsel in this matter. (Schindler Decl. ¶¶ 3–5.) Schindler explicitly informed Greenstein that Schindler strongly objected to the threatened practice, and that Greenstein did not have consent to tape record conversations with Schindler or with any other member of the Nissan legal team. (Id. at ¶ 5.) Because Greenstein refused to confirm that he

would not record future calls, and in order to minimize further disputes, Schindler chose to permanently cease further telephonic communication with Greenstein. (Id. ¶ 6.)

Other lawyers at Latham & Watkins, however, continued to communicate with Greenstein via telephone. In October 2001, a dispute again arose between Greenstein and counsel for Nissan, Catherine Bridge ("Bridge"), this time regarding the scheduling of certain expert depositions. (Bridge Decl. ¶ 4.) The parties disagreed about who was responsible for the delays in scheduling. At this time, Greenstein informed Bridge that all telephone calls and meetings between counsel "may be" tape recorded. (Id.) According to counsel for Nissan, until Greenstein reiterated his threats to Bridge in October 2001, counsel for Nissan were not aware that Greenstein had disregarded Schindler's explicit statement seventeen months prior that counsel for Nissan did not consent to the recording of any telephone calls. (Pls' App. at 7.) Bridge again informed Greenstein that no attorneys at Latham & Watkins had consented to Greenstein tape recording their telephone conversations, and she asked Greenstein directly whether he had in fact been recording conversations. (Bridge Decl. Ex. A.) Greenstein refused to confirm or deny if any telephone calls had been recorded.

Greenstein contends that throughout the course of this litigation, counsel for Nissan have repeatedly mischaracterized and misstated what occurred in telephone conversations. In particular, Greenstein contends that counsel for Nissan "took advan-

---

1. Specifically, Schindler states: "I believed that Neil Greenstein, counsel for NCC, had told me that Mr. Uzi Nissan had come down significantly from his '8 figure' demand for the sale of the nissan.com domain name. Mr. Greenstein denied that he made those comments. Indeed, at one point towards the end

of the mediation, Mr. Greenstein became quite agitated, got out of his chair and started screaming that counsel for Nissan was lying about conversations that had taken place in advance of the mediation." (Schindler Decl. ¶ 4.)

tage of their size and would deny that certain statements were made in such conversations, or would assert that Defendant's counsel had made a certain statement, which he did not." (Def's Opp. at 1.) It was in response to this conduct, Greenstein claims, that he "notified Plaintiffs that all oral communications were subject to being recorded" so that "parties remain honest and truthful when describing what occurred in the oral communications." (Def's Opp. at 2.)

Greenstein's allegations regarding the supposed misconduct are, at best, extremely vague.[2] Counsel for NCC asserts that counsel for Nissan engaged in "improper tactics" and "unorthodox actions" which required that Greenstein take certain "defensive actions." (Def's Opp. at 1–2.) For example, Greenstein asserts, without providing any specific names or dates, that "[t]here were times when certain key items in a conversation were later denied by Plaintiff's counsel." (Greenstein Decl. ¶ 3.) Similarly, Greenstein asserts that "[t]here have been instances during this lawsuit when a counsel for Plaintiffs made one representation to me and then later denied that such representation was ever made to me." (*Id.*) Again, no details are provided. The sole specific allegation that Greenstein makes is that counsel for Nissan intentionally delayed the depositions of plaintiffs' expert witnesses and that this activity is "precisely why the threat of recording is necessary in this case." (Def's Opp. at 4.) In short, the Court finds no basis for Greenstein's allegations. Specifically, the Court finds no basis whatever for the allegations that Schindler and other counsel for Nissan have acted in other

than a highly ethical and professional manner throughout this litigation.

## II.  Discussion

### A.  *Did Counsel for NCC Record Conversations With Opposing Counsel?*

As a threshold matter, it is not clear whether, to this date, counsel for NCC has in fact recorded any conversations with counsel for Nissan, or whether he has only threatened to do so. Greenstein refuses to confirm or deny if any calls were recorded, and obliquely refers to his threats to record conversations between counsel as "the decision to subject all oral communications to potential recordation." (Def's Opp. at 2.) Greenstein has made the following statements to counsel for Nissan: "As you may know, there were some issues earlier in this case where your team made certain statements that were later denied. As such, the team was put on notice that all calls and in-person meetings may be recorded" (Bridge Decl. Ex. A); "You, as well as your other team members, are on notice that all calls are susceptible of being recorded" (Bridge Decl. Ex. A); "Your firm has been on notice, both written and oral, about potential recording of calls for over a year now" (Bridge Decl. Ex. A); and "Whether or not a particular call was recorded, it requires that your lawyers be honest in future dealings about what transpires in the conversations" (Pl's Appl., Ex. B).

When counsel for Nissan restated their objection to the practice in November 2001, Greenstein refused to refrain from tape recording future conversations be-

---

**2.**  During oral argument, the Court asked counsel for NCC to recollect, in general terms, the worst incident that Greenstein could remember of misconduct by counsel for Nissan. Counsel for NCC was unable to recollect the details of a single incident in which counsel for Nissan had misrepresented the

substance of an earlier conversation. The Court finds it curious that counsel for NCC was not able to recollect a single incident despite the fact that it was this conduct that allegedly provoked the threats to record conversations between counsel in the first place.

tween counsel. Greenstein's failure to confirm whether he has in fact recorded any conversations in the past may reflect his recognition that such conduct violates California penal law, or at the very least, that the law is unsettled in this area. Either way, the fact that counsel must engage in semantic games to avoid potentially implicating himself in criminal conduct demonstrates why it is inappropriate for counsel in civil litigation to threaten to record conversations with opposing counsel.

### B. Does California Penal Code § 632 Prohibit the Alleged Conduct?

California Penal Code § 632, a part of the Invasion of Privacy Act, provides that:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Cal.Penal Code § 632(a).[3]

Counsel for NCC contends that California Penal Code § 632 is inapplicable to these facts because (1) the communications at issue are not "confidential"; and (2) the communications at issue are exempt from § 632 under the statutory exception for "judicial proceedings." The Court disagrees.

### 1. Are the Communications At Issue Confidential?

California Penal Code § 632 defines "confidential communication" as follows:

> The term "confidential communication" includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Cal.Penal Code § 632(c).

Counsel for NCC contends that the communications at issue are not "confidential" (and therefore § 632 does not apply) because the parties lacked an objectively reasonable expectation that the conversation would not be divulged to anyone else. *Deteresa v. American Broad. Cos.*, 121 F.3d 460, 465 (9th Cir.1997) (holding that application of the definition of "confidential communication" under § 632(c) turns on the reasonable expectations of the parties judged by an objective standard rather than by the subjective assumptions of the parties). It is well settled that construction of § 632 calls for a determination as to whether the circumstances reasonably indicate that any party to such communication desires it to be confined to the parties, or whether the circumstances are such that the parties to the communication would reasonably expect that the communication may be recorded. *Deeter v. Angus*, 179 Cal.App.3d 241, 224 Cal.Rptr. 801 (1986). A participant to a telephone communication is exempt from the prohibition

---

**3.** Under California Penal Code § 637.2, a civil action for invasion of privacy may also be brought against the person who committed the violation. *Warden v. Kahn*, 99 Cal.App.3d 805, 160 Cal.Rptr. 471 (1979).

against recording the communication only if the other participant knows that it is being recorded. *People v. Suite,* 101 Cal. App.3d 680, 161 Cal.Rptr. 825 (1980).

██ In this case, the conversations between counsel involved litigation-related matters such as discovery disputes, scheduling issues, and court-mandated meet and confers. The question is whether the parties had an objectively reasonable expectation that these conversations would not be divulged to anyone else. The Court finds that counsel for Nissan did have this objectively reasonable expectation, and that conversations between counsel in civil litigation are confidential communications within the meaning of § 632.

██ Counsel for NCC contends that there was no objectively reasonable expectation of privacy regarding the conversations between counsel because counsel for Nissan were put "on notice" that the conversations were "subject to being recorded" in June 2000. It is true that in June 2000 Greenstein threatened to record future conversations. Counsel for Nissan maintained an objectively reasonable expectation of privacy regarding these conversations, however, because Schindler explicitly told Greenstein that Nissan's attorneys did not consent to being tape recorded.

In *People v. Pedersen,* in a prosecution of the defendant for embezzlement from his partnership, the court found that a recorded conversation of a meeting between Pedersen and several general partners was not a confidential communication within the meaning of § 632 because the nature of the meeting and the manner in which it was carried out allowed the court to reasonably conclude that it was no different than other business meetings of these parties that were not confidential. 86 Cal.App.3d 987, 150 Cal.Rptr. 577 (1978). Under this analysis, it could be argued that any business or commercially-

related communications are analogous to the business meeting in *Pedersen,* in which there was no expectation of confidentiality. *Pedersen* is distinguishable, however, because in that case, the communication occurred in a context where Pedersen was under suspicion for embezzling funds, and at a meeting where he was being cross-examined by his partners regarding the fraud in preparation for the filing of criminal charges.

In *Deteresa,* the plaintiff was a flight attendant on the flight that O.J. Simpson took the night that his wife Nicole Brown Simpson was murdered. After the flight, the plaintiff was approached by a television producer, who explained that he worked for ABC and that he wanted to speak with her about appearing on television to discuss what she had observed on the airplane. The plaintiff told the producer that she would consider appearing on the show. In the same conversation, she provided information about O.J. Simpson's behavior on the flight, which the producer tape recorded. Subsequently, when the plaintiff decided not to appear on the show, the producer informed her that he had recorded their entire conversation. The Ninth Circuit held that no one in the plaintiff's shoes could reasonably expect that a reporter (who had immediately revealed himself as such) would not divulge her account of Simpson's activities on the flight.

*Deteresa* is distinguishable from the instant case on several grounds. In that case, the plaintiff voluntarily shared information regarding a celebrity murder scandal with a self-identified journalist. It is clear that someone who encountered O.J. Simpson in the aftermath of Nicole Brown Simpson's murder, and then discussed his or her observations with a journalist, could be said to lack an objectively reasonable expectation that the conversation would remain confidential. Attorneys participat-

ing in private civil litigation, however, cannot be said to occupy an analogous role to the plaintiff in *Deteresa.*

Even more significant is the fact that Schindler explicitly told Greenstein in June 2000 that counsel for Nissan strongly objected to Greenstein's threatened practice of tape recording conversations, and that Greenstein did not have consent to tape record any calls with any member of the Nissan legal team. (Schindler Decl. ¶ 5.) The Court agrees that the clear effect of Schindler's statements was to reinforce the expectation that all subsequent calls between counsel for Nissan and counsel for NCC would not be tape recorded. In other words, counsel for Nissan reasonably expected that their conversations would not be recorded because they had expressly objected to the practice. Therefore, the Court finds that the communications were still confidential under the *Deteresa* standard.

█ Counsel for NCC also contends that there was no reasonable expectation of privacy surrounding the communications because the content of conversations between counsel are routinely presented to the Court in the form of declarations. For example, during the course of this litigation, counsel for Nissan have filed declarations with the Court setting forth the substance of certain discovery-related conversations between counsel. The Court does not find this argument to be persuasive.

> There is [, however,] a qualitative as well as a quantitative difference between secondhand repetition by the listener and simultaneous dissemination to a second auditor, whether that auditor be a tape recorder or a third party.... In the former situation the speaker retains control over the extent of his immediate audience. Even though that audience may republish his words, it will be done secondhand, after the fact, probably not

in entirety, and the impact will depend upon the credibility of the teller. Where electronic monitoring is involved, however, the speaker is deprived of the right to control the extent of his own firsthand dissemination ... In terms of common experience, we are all likely to react differently to a telephone conversation we know is being recorded, and to feel our privacy in a confidential communication to be invaded far more deeply by the potential for unauthorized dissemination of an actual transcription of our voice.

*Warden,* 99 Cal.App.3d at 813–14, 160 Cal. Rptr. 471 (citations and quotations omitted).

In short, counsel for Nissan retained an objectively reasonable expectation of privacy regarding the conversations between counsel because Schindler told Greenstein that no attorney at Latham consented to being tape recorded. The fact that counsel routinely submit declarations to the Court regarding the substance of conversations between counsel in no way alters this analysis.

### 2. *Communications Made In Connection with Judicial Proceeding*

█ Counsel for NCC contends that the conversations between counsel are part of the judicial process and are "communications made in furtherance of the litigation process." (Def's Opp. at 7.) Therefore, it is argued, these communications are not "confidential communications" because they are subject to the statutory exception relating to communications made as part of any legislative, judicial, executive or administrative proceeding open to the public. The fact that there may be a strong public policy in favor of an open and public litigation process, as counsel for NCC argues, in no way provides support for the proposition that counsel may secretly tape record

conversations with other attorneys.[4] There is also no authority for the proposition that private conversations between counsel are part of a "judicial proceeding" and the Court declines to adopt this overly broad and unsupported interpretation of the phrase "judicial proceeding."

As far as the Court is aware, there are few other reported decisions that address the question of whether lawyers may tape record conversations with opposing counsel, during the normal course of litigation, as part of an ostensible effort to prevent later disputes about what was said.[5] The lack of reported cases may well reflect the fact that this practice is relatively unprecedented, and that the vast majority of lawyers understand it to be undesirable.

### 3. *Professional Ethics*

Ethical problems are clearly presented by an attorney's tape recording of another party without his or her knowledge or consent. The American Bar Association Standing Committee on Ethics and Professional Responsibility recently issued a Formal Opinion which stated that a lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation does not necessarily violate the Model Rules of Professional Conduct. The Committee advised that a lawyer may not, however, record conversations in violation of the law in a jurisdiction that forbids such conduct without the consent of all parties, nor falsely represent that a conversation is not being recorded.[6] *See* American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 01–422, "Electronic Recordings by Lawyers Without the Knowledge of All Participants," June 24, 2001.

### C. *Federal Rule of Civil Procedure 1*

Federal Rule of Civil Procedure 1 instructs that district courts are to construe and administer the federal rules to "secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. The Advisory Committee Notes to Rule 1 elaborate that it is "the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." *Id.; see also Loya v. Desert Sands Unif. Sch. Dist.*, 721 F.2d 279, 281 (9th Cir.1983).

The Court finds that Greenstein's conduct interferes with the just and speedy determination of this action. It is inefficient for counsel to be reduced to communicating solely in writing. More generally, the conduct of counsel for NCC is simply inconsistent with the courteous and professional administration of the legal system.

### III. Conclusion

It is wrong to use the coercive and privacy-violating technique of tape record-

---

**4.** The Court notes that email communication sent by Greenstein to counsel for Nissan that was submitted to the Court is marked "Confidential." (Pls' Reply, Ex. A.)

**5.** Most cases that address tape recording on the part of counsel have considered whether it is ever appropriate for attorneys to record conversations with their own clients. One decision which the Court finds instructive is *People v. Selby*, 198 Colo. 386, 606 P.2d 45 (1979), where the court held that an attorney who surreptitiously tape recorded a conference between himself, the district attorney, and the judge in chambers was guilty of misconduct. The court stated that a lawyer may not secretly record any conversation he has with another lawyer, that candor is required between attorneys and judges, and that surreptitious recording suggests trickery and deceit. *Id.* at 390, 606 P.2d 45.

**6.** Obviously, a dispute exists in this case as to whether the taping at issue is in fact surreptitious given that NCC's counsel apparently "warned" Nissan that conversations were subject to being recorded.

ing (or threatening to tape record) what the Court finds to be confidential communications. Threatening to record conversations between counsel (or actual recordation of such conversations) is a troubling tactic. If counsel believes that conversations are being mischaracterized, there are traditional and non-invasive ways to address this situation. The parties may promptly confirm important communications in writing or via email. In more extreme situations, the parties may require the presence of third-parties. As the parties are well aware, however, it is often essentially impossible to avoid oral communication given the pace of litigation, conflicting schedules, and the rules that may require person-to-person conferences.[7]

The Court finds that the recordation of conversations between counsel in the normal course of litigation, without consent, is a violation of California Penal Code § 632. In addition to being illegal, the Court finds that it is inherently unethical for an attorney to record a conversation with another attorney regarding the routine progression of litigation without the other party's knowledge or consent. "Inherent in the undisclosed use of a recording device is an element of deception, artifice, and trickery which does not comport with the high standards of candor and fairness by which all attorneys are bound." *Selby,* 198 Colo. at 390, 606 P.2d 45. Such conduct damages the ordinary level of trust that should exist between counsel and contributes to the further deteriora-

tion of cordiality in the legal profession. This behavior raises suspicions, injures public confidence in the legal profession (and thereby the legal system), seriously impedes relations between counsel, and exerts a chilling effect on the normal flow of communication between opposing parties. "Simply put, such tactics are not becoming of an officer of the court." *Anderson v. Hale,* 202 F.R.D. 548, 556 (N.D.Ill.2001).

The Court orders counsel for NCC to cease: (1) any threats to record conversation between counsel; and (2) any actual recording of conversations between counsel. The Court denies counsel for Nissan's request that the Court compel counsel for NCC to disclose whether any past conversations were recorded.[8]

IT IS SO ORDERED.

---

7. *See e.g.,* Local Rule 6.1 which provides in part that "[w]ithin thirty (30) days after service of the answer by the first answering defendant, and thereafter as each defendant answers, counsel for the **parties shall meet in person** for the purpose of making the initial disclosures required hereunder and preparing a joint report to be submitted to the Court." C.D. Cal. Local Rule 6.1 (emphasis added).

8. Because the Court finds that tape recording conversations between counsel under these facts violates California Penal Code § 632, an order requiring NCC to disclose whether the threatened recordings were made could violate Greenstein's 5th Amendment rights. Therefore, the Court denies the plaintiffs' request that the Court order counsel for NCC to state whether any conversations with Nissan were tape recorded in the past.